## Commonwealth *v.* Fortune, Appellant.

Argued December 13, 1971. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Lenard H. Sigal,* for appellant.

*Milton M. Stein,* Assistant District Attorney, with him *James J. Wilson,* Assistant District Attorney, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague, First* Assistant District Attorney, and

*Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, April 13, 1972:
Judgment of sentence affirmed.

———

DISSENTING OPINION BY SPAULDING, J.:
I respectfully dissent.

Appellant Emma Fortune, having waived a jury trial, was convicted by Judge Herbert CAIN, of the Court of Common Pleas of Philadelphia, of possession of narcotic drugs. She appeals from the judgment of sentence, contending that the evidence is insufficient to support conviction.

The only evidence presented by the Commonwealth was the testimony of one of the arresting officers, who stated that the police went to appellant's house[1] in Philadelphia with a warrant specifying appellant's person and residence as the subjects to be searched.[2] When they arrived, the police identified themselves and showed the warrant to an unidentified female who was seated in the front window of the dwelling. Upon seeing the police, this woman fled to the inside of the house without opening the door. The officers forcibly entered the house moments later.

The dwelling involved is a two-story private home. The first floor of the house consists of a living room, dining room, kitchen, and rear shed, in that order from front to back. Doorways separate the dining room

---

[1] Appellant contends that there is no evidence in the record proving her to be the owner or lessee of the house involved. However, since the determination of this factual issue does not alter disposition of the case, I will assume that the Commonwealth has sufficiently proven her to be the principal resident of the dwelling.

[2] No challenge to the validity of the search or the warrant is made by appellant.

from the kitchen and the kitchen from the shed. When the police entered the house, they proceeded through the first floor to the rear. The officers discovered 21 glazed packets of heroin on the floor, in the doorway between the kitchen and rear shed. At this time there were four people in the living room on the first floor of the house, three males and the female who had been seated in the front window. Appellant came downstairs via a stairway which led directly into the kitchen. She was dressed in a robe. When the police found evidence which indicated that appellant was the owner of the premises they arrested her.[3] Their subsequent search of the rest of the house produced no other contraband.

This case cannot be distinguished from, and is therefore controlled by, the decision of the Pennsylvania Supreme Court in *Commonwealth v. Tirpak*, 441 Pa. 534, 272 A. 2d 476 (1971), and our subsequent decision in *Commonwealth v. Schulhoff*, 218 Pa. Superior Ct. 209, 275 A. 2d 835 (1971).

*Tirpak*, supra, involved a raid on a "pot" party in Washington County in 1967. The police entered the house involved after having obtained a search warrant. They discovered seven persons in the game room (including the four appellants in the case), all of whom were guests at a party given by the daughter of the home's owners.[4] The officers also found narcotics in the game room, consisting of four marijuana butts in an ash tray and an open jar of marijuana on the floor in the center of the room. The Supreme Court reversed

---

[3] This evidence consisted of letters addressed to appellant. The police officer also testified that when appellant entered the kitchen and saw him she exclaimed, "Don't lock me up" (N.T. 9, 20). This does not seem a particularly peculiar reaction for someone in a bathrobe, who in all probability has just been awakened, who finds police searching her kitchen.

[4] The hostess pleaded guilty to possession and use of narcotics.

the four appellants' convictions for possession of narcotics. Chief Justice BELL, speaking for the Court, held that: "[N]o marijuana was found on the person of any of the appellants, and . . . none of the appellants was observed smoking marijuana cigarettes. Under these circumstances, the basis of the Commonwealth's case was the legal theory of constructive or joint possession. The Commonwealth attempts to prove this by proof of the appellants at the scene, opportunity to commit or join in the possession or control of the marijuana, guilt by association, and suspicion or conjecture. Under the . . . circumstances of this case, this is not sufficient to prove beyond a reasonable doubt that these four defendants were guilty . . . ." 441 Pa. at 537.

In *Schulhoff,* supra, we also reversed a conviction for possession of narcotics which was based on the theory of constructive possession. In his opinion, Judge MONTGOMERY summarizes the evidence as follows: "[T]he drugs were found . . . in a couch situated in the living room of a second floor apartment . . . *rented by appellant* and Bernard G. Beck, Jr., who was also indicted for possession of narcotics . . . . At the time of the execution of the search warrant, the police found four persons, including appellant and Beck, asleep in the apartment, but none of them were found in the living room where the narcotics were discovered in the search." 218 Pa. Superior Ct. at 210. (Emphasis added.) Based on these facts this Court held that the evidence was insufficient to sustain appellant's conviction, citing the *Tirpak* decision as controlling.[5]

The factual circumstances in the instant case place it clearly within the purview of the above precedents. No drugs were found on the person of this appellant. Four persons, other than the appellant, were present

---

[5] Cited as, *sub. nom., Commonwealth v. Florida,* 272 A. 2d 476 (1971), therein.

in the dwelling and each had easier access to the contraband than appellant, since she was not on the same floor of the house where the heroin was found and they were. The most logical inference from the Commonwealth's evidence as to the position where the drugs were located is that when the unidentified female sitting in the front window of the house saw the police she or one of her three companions threw the heroin on the floor where the officers found it. The only evidence relating to appellant Fortune, as in *Tirpak*, supra, merely places her at the scene and shows the opportunity or suspicion that she possessed the drugs, based in part on guilt by association. This is not sufficient to support a conviction.[6]

Finally, as in *Schulhoff*, supra, the added factor that appellant was the owner or lessee of the residence where the contraband was found does not add any weight to the case against her in these circumstances. The evidence does not exclude the possibility that appellant had no knowledge of the existence of the narcotics until the police discovered them since she was not in the room where and when they were found. Any conclusion that appellant rather than one of the persons present on the first floor of the dwelling abandoned the narcotics is mere conjecture and does not meet the standard of proof beyond a reasonable doubt. See *Guevara v. U. S.*, 242 F. 2d 745 (5th Cir. 1957).

---

[6] "[C]ircumstantial evidence may, of course, be sufficient to convict. Nevertheless, because of the fact that it is circumstantial and that a grave wrong may be done to an innocent man by reasoning from circumstances not sufficiently cogent in themselves or as connected, and particularly not sufficiently exclusive of every innocent hypothesis, the courts have been very sedulous to prevent an innocent man being found guilty where the evidence does not conform to the acceptable standards." *Rodriguez v. U. S.*, 232 F. 2d 819, at 821 (5th Cir. 1959) ; cited with approval in *Guevara v. U. S.*, 242 F. 2d 745 (5th Cir. 1957).

I would reverse the judgment of sentence.