Commonwealth *v.* Fortune, Appellant.

Argued April 24, 1973.   Before EAGEN, O'BRIEN, ROBERTS, POMEROY and MANDERINO, JJ.

*Carolyn E. Temin,* with her *Susan L. Anderson,* for appellant.

*Milton M. Stein,* Assistant District Attorney, with him *James J. Wilson,* Assistant District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE MANDERINO, April 23, 1974:
Appellant, Emma Fortune, on June 16, 1971, in a nonjury trial, was convicted of the illegal possession of narcotic drugs. Act of September 26, 1961, P. L. 1664, §4(q), 35 P.S. §780-4(q). Post-verdict motions were denied and the appellant was sentenced to a term of not more than five years imprisonment. The Superior Court affirmed the judgment of sentence per curiam with a dissenting opinion by Judge SPAULDING, in which Judge MONTGOMERY and Judge HOFFMAN joined. *Commonwealth v. Fortune,* 221 Pa. Superior Ct. 264, 289 A. 2d 729 (1972). This appeal followed.

Appellant's sole contention is that the evidence presented by the prosecution was insufficient to establish beyond a reasonable doubt that the appellant was illegally in possession of narcotic drugs. We agree and reverse the judgment of sentence.

In determining whether the evidence is sufficient in law to prove that a defendant is guilty beyond a reasonable doubt of the crime or crimes charged, we must, after a verdict of guilty, accept as true all of the evidence, direct or circumstantial, and all *reasonable* inferences arising from the evidence, upon which the trier of facts could properly have based the verdict. *Commonwealth v. Malone,* 444 Pa. 397, 281 A. 2d 866 (1971); *Commonwealth v. Petrisko,* 442 Pa. 575, 275 A. 2d 46 (1971). Considered in that light, the evidence, and the *reasonable* inferences arising from the evidence, do not establish that the appellant was guilty of the illegal possession of narcotic drugs *beyond a reasonable doubt.*

The only evidence against the appellant was the testimony of the arresting officer, the only witness at the trial. His testimony established the following facts. On the afternoon of June 15, 1970, the arresting officer and several other officers, pursuant to a search warrant, went to 2350 North Carlisle Street, a two-story private home. The first floor of the home consisted of three rooms, a living room, a kitchen and a rear shed, each next to the other in a straight line going away from and perpendicular to the street. The living room had a large window on the street side of the room. The front door of the home was near the front window and opened into the living room. The stairs to the second floor were to the right of the front door as one enters the residence. The rear portion of the living room was used as a dining area.

When the police arrived, they saw a woman (not the appellant) seated at the large living room window. The window was open and the police, from outside the resi-

dence, identified themselves and showed the search warrant to the woman at the window. The woman immediately ran away from the window, and the police proceeded, within seconds, to break down the front door. The prosecution witness was the first policeman to enter the residence. He ran directly from the front door, through the front room (living room and dining area), into the kitchen even though he testified that he did not see in what direction the woman fled. He found twenty-one packets of heroin on the floor in the doorway between the kitchen and rear shed. No one was in the rear shed or in the kitchen. Three men, and the woman seen earlier seated at the open window, were in the living room area of the front room. After the police entry, the appellant, who was wearing a robe, came downstairs, went through the living room and entered the kitchen where the arresting officer was picking up the packets from the floor. The appellant said "Don't lock me up." The appellant and the entire residence were searched but no other narcotics were found. The appellant was arrested after the police found letters addressed to her at the address being searched and concluded that she was the resident of the premises.

When the illegal possession of contraband is charged, the evidence must establish that the appellant had a conscious dominion over the contraband. *Commonwealth v. Davis,* 444 Pa. 11, 280 A. 2d 119 (1971). The illegal possession of narcotic drugs is a crime which "by its very nature is unique to the individual. By definition, the possessor is the only person who could commit this crime. Guilt by association . . . is unacceptable." *Commonwealth v. Reece,* 437 Pa. 422, 427, 263 A. 2d 463, 466 (1970). *See also Commonwealth v. Tirpak,* 441 Pa. 534, 272 A. 2d 476 (1971). The presence of one person in a group of people at the scene "is not of critical import in drug possession cases." *Commonwealth v. Reece,* 437 Pa. 422, 427, 263 A. 2d 463, 466

(1970). *See also Commonwealth v. Tirpak*, 441 Pa. 534, 272 A. 2d 476 (1971). "[T]he fact of possession loses all persuasiveness if persons other than the accused had equal access . . . to the place in which the property was discovered. . . ." *Commonwealth v. Davis*, 444 Pa. 11, 16, 280 A. 2d 119, 121 (1971), *quoting* 9 J. Wigmore, Evidence §2513 (3d ed. 1940). When the crime charged is the illegal possession of narcotic drugs, the presence of a person at the scene, without a consideration of the totality of the circumstances, does not prove the crime.

In this case, no narcotic drugs were found on the person of the appellant. None were found anywhere else on the premises. Those that were found were not in a place normally accessible only to a resident of a home. The drugs were found in plain view, strewn on the kitchen floor. Four persons were on the first floor and had more immediate access to the kitchen than did the appellant who was upstairs when the police broke in "within seconds" after their arrival. There is no evidence that the appellant had any knowledge of the presence of the drugs in her home prior to the arrival of the police. The appellant's residency in the home does not establish any such knowledge. We cannot assume that a resident of a home, where guests are present, knows of the full contents of the premises. The appellant's remark, "Don't lock me up," is at best, equivocal as to whether the appellant had any prior knowledge that drugs were on the premises. The record is silent concerning the verbal context, if any, in which the remark was made. The record does not indicate what prompted the remark. The appellant's remark, made after the police officers broke down her front door and entered her home, was as consistent with innocence as with guilt.

Under the circumstances of this case, the evidence and the *reasonable* inferences arising therefrom, did not

establish that the appellant was guilty beyond a reasonable doubt of the illegal possession of narcotic drugs.

The order of the Superior Court and the judgment of sentence are reversed and the appellant is ordered discharged.

Mr. Chief Justice JONES and Mr. Justice NIX took no part in the consideration or decision of this case.

Mr. Justice POMEROY dissents.