Commonwealth *v.* Carter, Appellant.

Submitted March 28, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Anthony J. Cavuto,* for appellant.

*Douglas B. Richardson, Mark Sendrow, David Richman,* and *Steven H. Goldblatt,* Assistant District Attorneys, *Abraham J. Gafni,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *F. Emmett Fitzpatrick,* District Attorney, for Commonwealth, appellee.

OPINION BY HOFFMAN, J., September 23, 1974:

Appellant contends that the evidence presented at trial is insufficient to sustain his convictions for pos-

session of narcotic drugs, possession of dangerous drugs and sale of dangerous drugs.

On February 29, 1972, Officer Wesley Servance of the Philadelphia Police Department went to the premises at 2236 N. 18th Street with a search warrant. The building at this address consists of two stories, each containing a separate apartment. According to the testimony of Officer Servance, he rang the door bell to the second floor apartment. He testified that while he was waiting for a response, four youths joined him. At that point, Erskine Thomas, appellant's co-defendant at trial, answered the door and spoke with the four youths. Thomas agreed to meet the boys at a later time. Thomas then asked Officer Servance if he had the money and the officer answered affirmatively. Thomas went upstairs and returned with two green pills. Officer Servance handed Thomas a ten-dollar bill, and Mr. Thomas again entered the apartment in order to get change. When Thomas returned, Officer Servance identified himself and presented the search warrant. Thomas attempted to shut the door and prevent Servance from entering.

Officer Berry had been waiting outside during Officer Servance's conversation with Thomas. After observing Officer Servance struggle with Thomas and hearing Thomas yell to "Billy" to "get rid of the stuff," he forced the door open and ran upstairs. Officer Berry testified that he stopped appellant as he was entering the kitchen. A search of the kitchen revealed drugs contained inside a coffeepot which had a plastic container over it.

When testing the sufficiency of the evidence, we must review the testimony in the light most favorable to the verdict winner, *Commonwealth v. Blevins*, 453 Pa. 481, 309 A. 2d 421 (1973), and must accept as true all of the evidence, direct or circumstantial, and all reasonable inferences arising from the evidence,

upon which the trier of facts could properly have based the verdict. *Commonwealth v. Fortune,* 456 Pa. 365, 318 A. 2d 327 (1974). When viewed in this posture, the evidence was sufficient to establish appellant's guilt on the charges of possession, but not on the charge of illegal sale.

Since no drugs were found on appellant's person, the Commonwealth had to prove joint constructive possession. Two elements are essential to such a finding: the power of control and the intent to exercise that control. *Commonwealth v. Townsend,* 428 Pa. 281, 237 A. 2d 192 (1968). Although it was never conclusively shown that appellant was a resident of the apartment, power of control can be inferred from the fact that he and the co-defendant were the only two people present during the arrests and subsequent search. While presence in the vicinity of illegal drugs by itself does not prove the crime of possession, *Commonwealth v. Tirpak,* 441 Pa. 534, 272 A. 2d 476 (1971), knowledge of the presence of contraband and intent to exercise control can be inferred from the totality of the circumstances, of which presence is a factor. *Commonwealth v. Fortune,* supra. In this case, the police officer stopped the appellant just as he was about to enter the room in which the illegal drugs were found. This occurred immediately after appellant's co-defendant had shouted to "get rid of the stuff." Since the contraband was hidden in that room it is reasonable to infer that appellant was aware of its existence and was obeying the instruction of his co-defendant to destroy the evidence. Under the totality of the circumstances, therefore, the trier of fact was justified in finding appellant guilty of possession of illegal drugs.

Appellant was also convicted for the sale of dangerous drugs. Despite the fact that appellant was in possession of dangerous drugs, his conviction for sale must be reversed. It is clear from the record that

appellant played no role in Thomas's illegal sale to Officer Servance: appellant remained in the upstairs apartment throughout the entire transaction. The Commonwealth has produced no evidence whatsoever which can serve to link appellant with the sale of drugs by his co-defendant. There was no proof that appellant was aware that Thomas was making a sale, let alone that appellant intended to facilitate that criminal activity. "Our case law sets out that an accomplice is one who 'knowingly and voluntarily cooperates with or aids another in the commission of a crime'. . . . He is not a passive bystander who happens to come upon an illegal activity but does not participate in same . . . . Rather, he must with the requisite knowledge and intent join in facilitating the criminal activity." *Commonwealth v. Jones,* 213 Pa. Superior Ct. 504, 508, 247 A. 2d 624 (1968). See also, *Commonwealth v. Wilson,* 449 Pa. 235, 296 A. 2d 719 (1972).

The judgments of sentence on the possession convictions are affirmed; the judgment of sentence on the sale conviction is reversed, conviction vacated, and appellant ordered discharged.[1]

---

[1] While we affirm the possession convictions, we must remand to the court below for sentencing consistent with our opinion in *Commonwealth v. Lockhart,* 223 Pa. Superior Ct. 60, 296 A. 2d 883 (1972).

---

DISSENTING OPINION BY PRICE, J. :

Appellant was convicted of possession of narcotic drugs, sales of dangerous drugs, and possession of dangerous drugs following a non-jury trial on October 30, 1972. Post-trial motions were argued and denied, and after the submission of psychiatric and pre-sentence reports, the appellant was sentenced to five years probation on the possession and sale of narcotic drugs. (Indictment No. 903). Sentence was suspended as to Indictments Nos. 902 and 904.

The appellant appeals the judgment of sentence, alleging that the evidence was insufficient to convict him of any of the charges, and that the Commonwealth failed to prove that the two pills sold to Officer Servance were controlled or dangerous drugs, as defined in 35 P.S. §§780-101 to 144.

The testimony reveals that at approximately 9:36 P.M. on February 29, 1972, Officer Wesley Servance of the Philadelphia Police Department went to the premises at 2236 North 18th Street, occupied by Mr. Thomas and Mr. Carter, with a search warrant. The officer rang the door bell to the second floor apartment, but before it was answered, he was joined by four youths who waited with him outside the house. The bell was then answered by Erskine Thomas, the co-defendant in this case, who spoke to the boys, telling them he would meet them at the corner later that day, when they had money. The four youths left the premises.

Mr. Thomas then engaged Officer Servance in a brief conversation,[1] went upstairs, and returned a short time later with two green pills. Officer Servance gave him a ten-dollar bill, and Mr. Thomas again went into the apartment, this time for change. When he returned, Officer Servance identified himself and presented the warrant. Mr. Thomas struggled with the policeman, to try to keep him from entering, but was unsuccessful as Officer Carver Berry appeared at the scene, forced the door open, and ran upstairs. Mr. Thomas yelled to "Billy" to "get rid of the stuff" as "the police is [sic] down here." (NT 16, 35).

After having subdued Mr. Thomas, Officer Servance joined Officer Berry in the apartment. As he entered

---

[1] Q. "Did you say anything to Mr. Thomas?" A. "No, I didn't. He just asked, 'Do you have the money? It will cost you eight dollars.' I said, 'Yes, I have the money.'" Q. "Then he went upstairs; is that right?" A. "That's correct." (NT 21)

the apartment, Officer Servance saw the appellant, William Carter, standing in the kitchen with Officer Berry.

Officer Berry testified that he had stopped the appellant, who was proceeding into the kitchen from the hallway, immediately after Mr. Thomas shouted to Billy to "get rid of the stuff."

A search of the kitchen revealed, among many other drugs and related paraphernalia, eighty-six (86) green pills identical to those previously sold to Officer Servance.

## I.

In testing the sufficiency of the evidence, we must review the testimony in a light most favorable to the verdict winner. *Commonwealth v. Blevins,* 453 Pa. 481, 309 A.2d 421 (1973); *Commonwealth v. Portalatin,* 223 Pa. Superior Ct. 33, 297 A.2d 144 (1972). In so doing, we will accept as true the Commonwealth's evidence and all reasonable inferences arising therefrom. *Commonwealth v. Hornberger,* 441 Pa. 57, 270 A.2d 195 (1970). The test of the sufficiency of the evidence is whether, accepting as true all evidence, regardless of whether it is direct or circumstantial, upon which, if believed, the fact-finder could properly have based his verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime charged. *Commonwealth v. Chasten,* 443 Pa. 29, 275 A.2d 305 (1971); *Commonwealth v. Whiting,* 409 Pa. 492, 187 A.2d 563 (1963).

The findings of the judge, sitting without a jury, if supported by the record, are entitled to the same weight as a jury verdict. *Commonwealth ex rel. Epps v. Myers,* 197 Pa. Superior Ct. 145, 177 A.2d 28 (1962). Consequently we will not disturb the trial court's discretion in refusing to grant a new trial on the grounds of insufficient evidence where there has been no abuse

of discretion. *Commonwealth v. Zapata,* 447 Pa. 322, 290 A.2d 114 (1972); *Commonwealth v. Hayes,* 205 Pa. Superior Ct. 338, 209 A.2d 38 (1965).

Viewing the evidence in a light most favorable to the Commonwealth, I find ample evidence to support the lower court's verdict. The trier of fact is entitled to believe all, or none, or any part of the testimony he hears, and I find no abuse of discretion involved in this case. *Commonwealth v. Horn,* 395 Pa. 585, 150 A.2d 872 (1959).

Appellant's co-defendant, Thomas, testified that he and appellant lived in the apartment. Large quantities of hashish, marijuana, tetracycline, LSD, librium, darvon, methamphetamines and other drugs were found in the kitchen of appellant's apartment. Testimony revealed that there was but one door to the apartment (NT 23) so that no one could have placed the drugs at the scene between the arrests and the seizure of the drugs. Moreover, no one but appellant and Mr. Thomas were in the apartment during the seizure.

This evidence, when considered with Officer Berry's testimony that he stopped appellant, who was on his way into the kitchen, immediately after Thomas yelled to "get rid of the stuff," is more than sufficient to establish appellant's conscious control over and knowledge of the illegal drugs found in the kitchen. See *Commonwealth v. Whitner,* 444 Pa. 556, 281 A.2d 870 (1971); *Commonwealth v. Davis,* 444 Pa. 11, 280 A.2d 119 (1971).

The totality of the circumstances also supports the trial court's verdict concerning appellant's participation in the sale of drugs. The quantity of drugs found on the premises belies any conclusion but that appellant and Thomas were engaged in a concerted sales operation. See *Commonwealth v. Shaffer,* 447 Pa. 91, 288 A.2d 727 (1972). The evidence is ample to support appellant's conviction.

## II.

Appellant contends that because the Narcotic's Division commingled the two pills sold to Officer Servance with the 86 other, identical pills found in appellant's kitchen, the evidence was insufficient to establish that the two sold were controlled or dangerous substances. Appellant premises this argument on the stipulated fact that only 8-12 of the total 88 pills were tested by the Criminology Laboratory, and, therefore, that the Commonwealth did not prove that the two sold were separately analyzed.

I agree with the lower court opinion when it states: "The Court believes that it would be more efficient police procedure to segregate the two pills which were confiscated as part of the alleged sale, analyze them separately, and then have evidence introduced at the trial independent of any other findings as a result of a lawful search. However, in the instant case, an analogy might be drawn to the bromide: 'It looks like a duck, feels like a duck, walks like a duck, quacks like a duck, has all the characteristics of a duck, therefore, it must be a duck.'" (R 6a)

The two pills sold to Officer Servance were the same color, size and description as the 86 pills confiscated during the search and seizure. They could not be differentiated in any fashion; and it is apparent from the speed with which Erskine Thomas offered to sell the pills to Officer Servance, went upstairs, and returned with them, that he did not specifically pre-select or pre-package the two pills, but merely took them from his stockpile. These facts do not support the inference which appellant would have us draw: i.e., that he and Thomas kept two types of pills, identical in appearance but different in content in the same container in their kitchen.

To prove by circumstantial evidence that the accused is guilty beyond a reasonable doubt, the Commonwealth must overcome the presumption of innocence which the Constitution vests in every person. However, such proof need not exclude every possibility except those which indicate the guilt of the accused. *Commonwealth v. Manuszak,* 212 Pa. Superior Ct. 240, 243 A.2d 137 (1968); *United States v. Lanni,* 335 F. Supp. 1060 (E.D. Pa. 1971), *aff'd,* 446 F. 2d 1102 (3d Cir. 1972).

The evidence credited by the trial judge overwhelmingly indicates that the two pills sold and the 86 confiscated were the same type of pill, and that all contained LSD. That Erskine Thomas and appellant intended to sell dangerous drugs is evident from the quantity and variety of controlled and dangerous substances found on the premises and from Thomas' agreement to sell to four youths and Officer Servance. That the pills actually sold were taken from the larger quantity uncovered by the police investigation is the only reasonable inference to be drawn in light of all the testimony.

I would affirm the Judgment of Sentence.

JACOBS and VAN DER VOORT, JJ., join in this opinion.