364 A.2d 505

**COMMONWEALTH of Pennsylvania**

**v.**

**Robert Allen HICKS, Appellant.**

Superior Court of Pennsylvania.

Sept. 27, 1976.

172

Sebastian M. Rainone (Court Appointed), Philadelphia, for appellant.

Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Philadelphia, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

SPAETH, Judge:

On August 8, 1973, appellant was convicted by a judge sitting without a jury of possession of a controlled

substance with intent to deliver,[1] and on October 12 he was sentenced to two and one-half to fifteen years in prison. After a Post Conviction Hearing Act[2] hearing on May 1 and 14, 1974, appellant was granted leave to file a motion in arrest of judgment *nunc pro tunc.* This motion was subsequently denied and no appeal was taken. However, on February 14, 1975, a second PCHA hearing was held and appellant was granted leave to file an appeal *nunc pro tunc.*

Appellant's sole contention is that the evidence was insufficient to establish beyond a reasonable doubt that he was illegally in possession of a controlled substance with intent to deliver. "In determining whether the evidence is sufficient in law to prove that a defendant is guilty beyond a reasonable doubt of the crime or crimes charged, we must, after a verdict of guilty, accept as true all of the evidence, direct or circumstantial, and all *reasonable* inferences arising from the evidence, upon which the trier of facts could properly have based the verdict." *Commonwealth v. Fortune,* 456 Pa. 365, 367, 318 A.2d 327, 328 (1974). By this test the evidence was insufficient. We therefore reverse.

On January 1, 1973, three Philadelphia police officers, armed with a search warrant, went to 1719 Wagner Street, Philadelphia. The name on the warrant was "Bobby." Bobby was described as a Negro male, 28 to 33 years of age, five feet seven inches tall, weighing 145 pounds, and having a mustache.

As the officers approached 1719 Wagner Street they saw appellant drive up in his car and park. They followed him as he went onto the front porch and began to open the door. One officer identified himself and gave

1. The Controlled Substance, Drug, Device and Cosmetic Act, Act of April 14, 1972, P.L. 233, No. 64, § 13; as amended October 26, 1972, P.L. 1048, No. 263, § 1, 35 P.S. § 780–113(a)(30).

2. Act of Jan. 25, 1966, P.L. (1965) 1580, § 1 *et seq.,* 19 P.S. § 1180–1 *et seq.*

appellant a copy of the search warrant. Appellant let the officers in, and a search was made.

No controlled substance was found on appellant. In the front bedroom on the second floor, however, the officers found approximately 50 packets of heroin in the top drawer of a dresser and approximately 25 packets in the bottom drawer. Also found in the front bedroom were two boxes of empty glazed paper packets, one box of rubber bands, one measuring spoon, a razor blade, and 555 dollars. Male clothing was found in that room and in other parts of the house. There was evidence that another male lived in the middle bedroom, but the officers testified that they could not recall if they saw any female clothing.

While the police were at 1719 Wagner Street, a woman, Sherry Wilson, entered. She was searched, and when heroin was found on her person, she was arrested.

A number of personal papers, including several bills and documents with the name of Robert Hicks and the Wagner Street address, were found in the house. It is unclear, however, where they were found. One of the arresting officers testified as follows:

Q. Now, in the front bedroom did you take with you any pieces of paper with Mr. Hicks' name on it?

A. Yes.

Then several questions later the same officer contradicted himself:

Q. You don't have with you any items that would put Mr. Hicks' name on anything in the front room, do you?

A. What?

Q. Do you have anything with you with the name Bobby on it in the front room?

A. There was papers, envelopes in the front bedroom.

 175

Q. Anything with the name Bobby on it?

A. No.

THE COURT: Anything with Robert Hicks on it?

THE Witness: No, sir.

Wilson testified as a defense witness that she was a roomer at 1719 Wagner Street, and slept in both the front and rear bedrooms. She also said that she was a heroin addict, and that she got her heroin from another female roomer at 1719 Wagner. She said that appellant did not know heroin was used in his home, that she had never seen appellant with any heroin, and that the heroin found by the police belonged to the other female roomer. Appellant also testified that the heroin was not his, and that he did not know it was in the house.

The trial judge may not have believed Wilson and appellant.[3] Even so, the evidence is insufficient.

 When possession of a controlled substance is charged, the evidence must establish that the defendant had conscious dominion over the substance. *Commonwealth v. Fortune, supra; Commonwealth v. Davis*, 444 Pa. 11, 280 A.2d 119 (1971).

> The illegal possession of narcotic drugs is a crime which "by its very nature is unique to the individual. By definition, the possessor is the only person who could commit this crime. Guilt by association . . . is unacceptable." *Commonwealth v. Reece*, 437 Pa. 422, 427, 263 A.2d 463, 466 (1970). *See also Commonwealth v. Tirpak*, 441 Pa. 534, 272 A.2d 476 (1971). . . . "[T]he fact of possession loses all persuasiveness if persons other than the accused had equal access . . . to the place in which the property was discovered. . . ." *Commonwealth v. Davis*, 444 Pa. 11, 16, 280 A.2d 119, 121 (1971), *quoting* J. Wigmore, *Evidence* § 2513 (3d ed. 1940). When the crime

**3.** Since the judge did not write an opinion, we do not know the basis of his decision.

charged is the illegal possession of narcotic drugs, the presence of a person at the scene, without a consideration of the totality of the circumstances, does not prove the crime.

*Commonwealth v. Fortune, supra* 456 Pa. at 368–69, 318 A.2d at 328–29.

We applied these principles in *Commonwealth v. Maurer and Lauber,* Pa.Super., 361 A.2d 356 (1976), which involved a situation very much like that involved in the present case. Police officers searched Maurer's residence and found controlled substances in the kitchen and living room. No drugs were found on the person or among the personal effects of either of the defendants. Male and female clothing was found on the premises, but there was no evidence that the clothing belonged to the defendants. We held that the "fatal flaw" in the evidence of Maurer's guilt was that the other persons living in the house had equal access to the places where the contraband was found.

■ Here, appellant was not at home when the police arrived to conduct the search, and there is no evidence as to when appellant was last in the house or whether he was the last person in the house prior to the search. There is evidence that at least two other people had equal access to the house—the male roomer and Wilson, who arrived during the search. No controlled substance was found on appellant, although some was found on Wilson. Male clothing was found throughout the house, but there was no evidence to show that the clothing in the front bedroom, where the contraband was, belonged to appellant rather than to the other male. The evidence is unclear as to where appellant's personal papers were found. Finally, the trial judge stated that the only part of the search warrant description of "Bobby" that fit appellant was that he was a Negro male. Appellant was 52 years old.

Upon "consideration of the totality of the circumstances", *Commonwealth v. Fortune, supra,* one may conclude that it is possible that the controlled substance was appellant's, but not that it was his beyond a reasonable doubt.

The judgment of sentence is reversed and appellant is discharged.

VAN der VOORT, J., notes his dissent.