## Commonwealth v. Gabig

*Kevin Hess*, for Commonwealth.
*John McCrea, III*, for defendant.

SHUGHART, *P.J.*, October 8, 1982—Defendant's motions in arrest of judgment and for a new trial, now before us, follow his conviction in a bench trial on charges of possession of a controlled substance with intent to deliver and conspiracy. He was acquitted on a second charge of possession with intent to deliver. The two main issues raised in the post-trial motions are: (1) the validity of the search that yielded the marijuana he was found guilty of possessing, and (2) the sufficiency of the evidence.

I

The search in question was executed on March 2, 1982, pursuant to a search warrant issued March 1, 1982. The warrant authorized the search of storage locker number 127 at the Stor-Mor storage facility in Hampden Township. Locker 127 was rented by defendant. Upon execution of the warrant the

police found, inside a wooden chest within the locker, approximately five pounds of marijuana and bale wrappers commonly used in packaging large quantities of marijuana.

This search was also challenged by a codefendant in the companion case of Com. v. Freistak, 35 Cumberland L.J. 58 (1982). The codefendant, who had been given permission to use the locker, argued, as does defendant here, that the allegations set forth in the search warrant affidavit were insufficient to establish probable cause. The affidavit contains information provided by an anonymous informant and further information gained through a follow-up police investigation. In rejecting codefendant's argument, we stated the following:

From the affidavit we learn that the canines, formally trained in the identification of marijuana by use of their olfactory senses, independently gave positive indications that an odor of marijuana was emanating from locker 127. In addition to their formal training, these canines had participated in a combined total of three hundred and sixty searches resulting in the seizure of large quantities of controlled substances; therefore, their reliability was well established. Since this court has previously held that the detection of the odor of marijuana by humans can be sufficient to establish probable cause for issuance of a warrant, Com. v. Arce, 25 Cumberland L.J. 62 (1974), aff'd, 233 Pa. Superior Ct. 717, 339 A. 2d 569 (1975), we do not hesitate to conclude that the detection of such odor by trained, experienced canines, whose reliability is likely greater than a human's, can similarly suffice to establish probable cause: Id. at 64.

Nevertheless, defendant—unlike his codefendant—raises a subissue that challenges our above-stated conclusion. In essence, he argues that the

information concerning the canines' identifications be totally disregarded in considering the issue of probable cause. He contends that use of the canines, albeit not a physical intrusion of the storage locker, constituted a search under the fourth amendment to the United States Constitution and should be held invalid absent a warrant based upon probable cause. Unfortunately, neither defendant nor the Commonwealth briefed or argued this issue; each apparently assumed that the law clearly favored his position. Such is not the case, however. And because the issue of probable cause is directly and substantially affected by consideration of the canines' investigation, we are forced to consider this subissue.

Although there are no appellate cases on point in our jurisdiction, the weight of authority elsewhere clearly supports the proposition that olfactory investigations by canines are not searches within the meaning of the fourth amendment. See Annot., 31 A.L.R. Fed. 931 (1977); People v. Mayberry, 31 Cal. 3d 335, 644 P. 2d 810, 182 Cal. Rptr. 617 (1982) (cases cited therein). Nevertheless, there is authority to the contrary. The Court of Appeals for the Ninth Circuit held, in a well-reasoned opinion, that the use of trained canines to sniff luggage is a search for fourth amendment purposes: United States v. Beale, 674 F. 2d 1327 (9th Cir. 1982). Our research has revealed no cases, however, that have required a showing of probable cause in these situations. Even the Ninth Circuit in Beale recognized that the use of canines is a limited intrusion, thereby requiring only a showing of a "founded" or "articulable" suspicion rather than probable cause: Id. at 1335.

The indiscriminate use of canines to sniff the citizenry would surely arouse the ire of many and

would perhaps even meet with disapproval in those courts that, under different factual circumstances, have found canine sniffing to be outside the reach of the fourth amendment. Some of these courts, we believe, have placed undue weight on the fact that the canine "search" does not involve an actual physical intrusion. The law is well settled, however, that the fourth amendment is not constrained by the physical dimensions of suitcases or, for our purposes, the walls of storage lockers. See Katz v. United States, 389 U.S. 347 (1967). Nevertheless, as the Ninth Circuit recognized, a canine "search" is more limited than an actual physical intrusion. Furthermore, the court correctly noted that probable cause is not required for all fourth amendment searches. See, e.g., Terry v. Ohio, 392 U.S. 1 (1968).

For the reasons advanced in Beale, we hold that neither probable cause nor a warrant is required before a canine can be directed to smell the air around a person or his belongings for the presence of contraband. The question as to whether the use of canines constitutes a fourth amendment search that must be based upon an articulable suspicion is left to another day. The facts in the present case are sufficient to support an articulable suspicion; therefore, defendant's argument fails no matter how we would decide the issue. The affidavit alone reveals that an anonymous informant told the authorities that the codefendant would be storing marijuana at the Stor-Mor facility; that the police through investigation determined that the codefendant was authorized to enter locker 127; and that the codefendant was observed either bringing or removing packages from the locker on the day the warrant was sought. The suspicion of the police that the locker contained marijuana was certainly reasonable. Accordingly, under either

theory, use of the canines was permissible and the results of their sniffing can properly be considered in establishing probable cause.

The only other suppression issue raised by defendant concerns the alleged lack of authority on the part of the police to enter the restricted area ouside the individual storage locker. Although the area immediately outside defendant's locker was restricted from access by the general public, it was an area of common use by the lessees and employees of the lessor; indeed, activities occurring within this area could be viewed by the lessor's agent on duty at the time. Any expectation of privacy on the part of defendant in such a public area was unreasonable and unrecognized for fourth amendment purposes. See Katz v. United States, supra; Com. v. Devlin, 302 Pa. Super. 196, 448 A. 2d 594 (1982).

In sum, we find that the use of the canines was proper and that the results from those investigations were sufficient to establish probable cause. The pretrial suppression order was correct, and the evidence was properly admitted at trial.

## II

Defendant also argues that the evidence was insufficient to sustain the possession with intent to deliver and conspiracy convictions. Upon reflection, we agree.

## A

The Commonwealth attempted to prove that defendant possessed the marijuana found inside the wooden chest located within his storage locker. Since the marijuana was not found on defendant, the Commonwealth was burdened with proving

constructive possession: Com. v. Stokes, 294 Pa. Super. 529, 440 A. 2d 591 (1982). A showing of joint constructive possession would have been sufficient to sustain the conviction: Com. v. Gilchrist, 255 Pa. Super. 252, 386 A. 2d 603 (1978) (per curiam). At the very least, however, the Commonwealth had to show that defendant had the intent to exercise conscious dominion and control over the marijuana: Com. v. Rambo, 488 Pa. 334, 412 A. 2d 535 (1980); Com. v. Fortune, 456 Pa. 365, 318 A. 2d 327 (1974). " 'Guilt by association . . . is unacceptable.' " Id. at 368, 318 A. 2d at 329 (quoting Com. v. Reece, 437 Pa. 422, 427, 263 A. 2d 463, 466 (1970) ). Furthermore, the fact that defendant leased the storage locker where the marijuana was found and may have known of the presence of the marijuana does not sufficiently establish possession: Com. v. Wisor, 466 Pa. 527, 353 A. 2d 817 (1976) (by itself ownership does not support inference of possession); Com. v. Tine, 221 Pa. Super. Ct. 318, 292 A. 2d 483 (1972) (mere knowledge does not establish possession). Of course, these may be factors in determining whether an inference of possession is justified. See Fortune, supra (possession may be proved by circumstantial evidence).

The Commonwealth asks us to sustain the conviction for possession with intent to deliver on the following facts:

2. Defendant was present at the [codefendant's] residence at the time of the search.*

3. Approximately 65 pounds of marijuana and $15,000 in cash was found at the [codefendant's residence] (Commonwealth's Exhibit No. 1).

4. Also found in the search of the [codefendant's]

---

*The record reflects that defendant arrived at the residence while the search was underway. N.T. 4.

residence were receipts for rent that was paid for Stor-Mor Locker no. 127, registered in the name of defendant, Frank Gabig.

5. The State Police then searched Stor-Mor locker no. 127 pursuant to a search warrant.

6. After entering locker no. 127, a wooden chest was opened, and inside the wooden chest there was one green bag containing approximately four and a half to five pounds of marijuana, and there was additional plastic-type bale wrappers that were also removed from within the chest.

7. The records from the Stor-Mor facility indicate that locker no. 127 is rented to [the defendant] (Commonwealth's Exhibit No. 3).

8. The only other person who had access to the locker was codefendant Freistak, who was given written authorization to enter the locker.

9. The Stor-Mor ledger sheet, Commonwealth's Exhibit No. 1, indicates that the only people entering the locker in January and February were co-defendant's [sic] Gabig and Freistak, although Freistak made the entries on March 1, 1982.

Brief of Commonwealth at 4 & 5.

Even viewing the facts in the light most favorable to the Commonwealth, see Com. v. Tabb, 417 Pa. 13, 16, 207 A. 2d 884, 886 (1965), we cannot ignore the fact that the marijuana seized from the locker was found in a locked chest, with the only known key having been seized from the codefendent. Furthermore, there is no evidence to suggest that defendant had been in the locker the week prior to the search, although the codefendant had been there twice the day before the search. Moreover, the presence of furniture suggests that the locker was not being used solely for the storage of contraband.

Having reviewed the record before us, we cannot reasonably infer from the evidence presented, be-

yond a reasonable doubt, that defendant had the ability and intent to exercise control over the marijuana seized from the wooden chest. At the most, the evidence raises suspicions. In view of the insufficiency of the evidence as it relates to the possession charge, defendant's motion in arrest of judgment must be granted.

### B

Similarly, the evidence is insufficient to sustain the conspiracy conviction. We recently stated in Com. v. Perry, 32 Cumberland 113, 115 (1982), that

[t]o sustain a conviction for conspiracy, the Commonwealth must prove defendant's involvement in an agreement to accomplish a criminal objective and an overt act in pursuance of the conspiracy: Com. v. Lewis, 276 Pa. Super. 451, 419 A. 2d 544 (1980). The agreement is the gravamen of the offense: Com. v. Young, 280 Pa. Super. 393, 421 A. 2d 779 (1980) (per curiam). In establishing a conspiracy, direct proof of a formal agreement is not required: Com. v. Holmes, 482 Pa. 97, 393 A. 2d 397 (1978). The agreement may be inferred from the acts and conduct of the parties: Com. v. Kwatkoski, 267 Pa. Super. 401, 406 A. 2d 1102 (1979).

Although we believe that the conspiracy conviction could have been sustained in the face of the dismissal of the possession charge, the evidence that was intended to show a common understanding between the codefendants, upon closer scrutiny, merely shows an association between the two men. Needless to say mere association is not enough to sustain a conviction for criminal conspiracy: Com. v. Minnich, 236 Pa. Super. 285, 344 A. 2d 525 (1975). We can infer that defendant knew of the marijuana in Freistak's residence, but an

agreement to assist in the delivery of it is in the realm of speculation. Accordingly, the verdict will be set aside.

## ORDER

And now, October 8, 1982, for the reasons appearing in the opinion filed this date, defendant's motion for a new trial on the basis of illegally obtained evidence is overruled; however, his motion in arrest of judgment is sustained. The charges against Gabig are hereby dismissed.