J-A01004-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                  :              PENNSYLVANIA
                                  :

             v.                              :
                                  :

DANTAY CURTIS KENNEDY          :
                                  :

           Appellant                 :       No. 3303 EDA 2019

Appeal from the Judgment of Sentence Entered October 25, 2019
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0007422-2018

BEFORE:   BENDER, P.J.E., OLSON, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.:            **FILED:  APRIL 12, 2021**

Appellant, Dantay Curtis Kennedy, appeals from the aggregate judgment of sentence of 6½ to 15 years' incarceration, followed by 2 years' probation, imposed after he was convicted of various offenses, including carrying a firearm without a license, and possession of a firearm by a person prohibited.  Appellant challenges the sufficiency and weight of the evidence to sustain his firearm convictions.  After careful review, we affirm.

Briefly, Appellant's convictions stemmed from evidence that he led police on a high-speed chase, which ended when Appellant's vehicle collided with another car.  Appellant fled from his crashed vehicle on foot but was ultimately apprehended.  Approximately 10 to 15 feet from where he was

_____

[*] Retired Senior Judge assigned to the Superior Court.

arrested, police discovered a firearm. A search of Appellant's vehicle also revealed marijuana.

Following a jury trial, Appellant was convicted of various offenses stemming from his flight from police, the accident he caused, and his possession of drugs. He was also convicted of carrying a firearm without a license, 18 Pa.C.S. § 6106, and possession of a firearm by a person prohibited, 18 Pa.C.S. § 6105. On October 25, 2019, Appellant was sentenced to the aggregate term set forth *supra*. He filed a timely post-sentence motion, which the court denied. Appellant then filed a timely notice of appeal, and he complied with the court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The trial court filed a Rule 1925(a) opinion on March 11, 2020.

Herein, Appellant states two issues for our review:

[I.] Did not the [trial] court err by denying [A]ppellant's post-sentence motion for judgment of acquittal where the evidence was insufficient to show that he possessed the firearm recovered by police?

[II.] Did not the [trial] court abuse its discretion by denying [A]ppellant's motion for a new trial where the weight of the evidence favors concluding that he did not possess the firearm discovered by police?

Appellant's Brief at 5.

In Appellant's first issue, he argues that the Commonwealth failed to present sufficient evidence to prove he constructively possessed the gun found approximately 10 to 15 feet away from him when he was arrested. Preliminarily, we recognize:

We review claims regarding the sufficiency of the evidence by considering whether, "viewing all the evidence admitted in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Melvin*, 103 A.3d 1, 39 (Pa. Super. 2014) (citation and quotation omitted). Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact— while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence. *Id.* at 40 (citation and quotation omitted). "Because evidentiary sufficiency is a matter of law, our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Brooker*, 103 A.3d 325, 330 (Pa. Super. 2014).

*Commonwealth v. Parrish*, 191 A.3d 31, 36 (Pa. Super. 2018).

Here, the two firearm offenses for which Appellant was convicted obviously require the Commonwealth to prove that he possessed a gun. *See* 18 Pa.C.S. § 6106(a)(1) (providing, in relevant part, that "any person who … **carries** a firearm concealed on or about his person, … without a valid and lawfully issued license under this chapter[,] commits a felony of the third degree") (emphasis added); 18 Pa.C.S. § 6105(a)(1) (stating, in pertinent part, that "[a] person who has been convicted of an offense enumerated in subsection (b) … shall not **possess** … a firearm in this Commonwealth") (emphasis added). "The Crimes Code defines the term 'possession' as 'an act, within the meaning of this section, if the possessor knowingly procured or received the thing possessed or was aware of his control thereof for a sufficient period to have been able to terminate his possession.'" *Parrish*, 191 A.3d at 36 (quoting 18 Pa.C.S. § 301(c)).

This Court has held that "[p]ossession can be found by proving actual possession, constructive possession, or joint constructive

- 3 -

possession." *Commonwealth v. Heidler*, 741 A.2d 213, 215 (Pa. Super. 1999). Where a defendant is not in actual possession of the prohibited items, the Commonwealth must establish that the defendant had constructive possession to support the conviction. *Commonwealth v. Hopkins*, 67 A.3d 817, 820 (Pa. Super. 2013) (conviction under 18 Pa.C.S. § 6106(a) supported by a finding of constructive possession). *See also Commonwealth v. Parker*, 847 A.2d 745 (Pa. Super. 2004) (same). "Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement." *Hopkins*, *supra* at 820 (citation and quotation omitted). "We have defined constructive possession as conscious dominion," meaning that the defendant has "the power to control the contraband and the intent to exercise that control." *Id.* (citation and quotation omitted). "To aid application, we have held that constructive possession may be established by the totality of the circumstances." *Id.* (citation and quotation omitted).

It is well established that, "[a]s with any other element of a crime, constructive possession may be proven by circumstantial evidence." *Commonwealth v. Haskins*, 677 A.2d 328, 330 ([Pa. Super.] 1996) (citation omitted). In other words, the Commonwealth must establish facts from which the trier of fact can reasonably infer that the defendant exercised dominion and control over the contraband at issue. *See*, *e.g.*, *Commonwealth v. Davis*, 743 A.2d 946, 953–54 (Pa. Super. 1999) (holding that evidence was sufficient to prove constructive possession over drugs found in common areas of an apartment where the defendant entered the apartment using his own key, and possessed $800 in cash on his person, and police recovered defendant's identification badge, size-appropriate clothing, and firearms from a bedroom).

Significant to the instant appeal, a defendant's mere presence at a place where contraband is found or secreted is insufficient, standing alone, to prove that he exercised dominion and control over those items. *Commonwealth v. Valette*, … 613 A.2d 548, 551 ([Pa.] 1992). Thus, the location and proximity of an actor to the contraband *alone* is not conclusive of guilt. *Commonwealth v. Juliano*, 490 A.2d 891, 893 ([Pa. Super.] 1985). Rather, knowledge of the existence and location of the contraband is a necessary prerequisite to proving the defendant's intent to control, and, thus, his constructive possession. *Id.* [(citing *Commonwealth v. Thompson*, 428 A.2d 223, 224 ([Pa. Super.] 1981)[)].

> If the only inference that the fact finder can make from the facts is a suspicion of possession, the Commonwealth has failed to prove constructive possession. *Valette*, *supra* at 551. "It is well settled that facts giving rise to mere 'association,' 'suspicion' or 'conjecture,' will not make out a case of constructive possession." *Id.*

*Parrish*, 191 A.3d at 36-37 (emphasis added).

In this case, Appellant claims that the Commonwealth proved only that he was present in the location where the gun was discovered. He insists that the Commonwealth did not demonstrate that he even knew about the gun, let alone that he exercised dominion or control over it. Appellant contends that, instead, it was more logical to presume that someone driving on the public roadway had discarded the gun where it was discovered.

After carefully considering the evidence in this case, we reject Appellant's arguments. At trial, the Commonwealth first called to the stand Tinicum Township Police Officer Sean Ryan. Officer Ryan testified that on November 29, 2018, he was on routine patrol in a marked police vehicle from 6:00 p.m. to 6:00 a.m. N.T. Trial, 9/24/19, at 200. *Id.* At approximately 1:00 a.m., he attempted to stop a vehicle, later determined to be driven by Appellant, for going 10 m.p.h. above the posted speed limit. *Id.* at 200, 205. When the officer activated his lights and sirens, Appellant "took off at a very high rate of speed." *Id.* at 205. Appellant's vehicle ultimately crashed into another car, at which point Appellant exited his vehicle, "made eye contact" with the officer, and then "began to run." *Id.* at 206-07. As Appellant fled, Officer Ryan observed that "his right hand was near his right pocket[,]" although the officer did not see a firearm in Appellant's hand at any point, and

- 5 -

he never saw Appellant make a motion or gesture like he was throwing something. *Id.* at 207, 241, 248. Appellant ran into a marshy area with very thick mud and brush, at which point the officer lost sight of him. *Id.* at 207-08. Officer Ryan called for backup as he returned to the site of the accident to check on the driver of the car Appellant hit. *Id.* at 208-09.

Within minutes, approximately 10 to 15 backup officers arrived and set up a perimeter around the marshy area into which Appellant had run. *Id.* at 210, 245. A canine officer and dog also quickly arrived and, within "[o]ne to two minutes[,]" they located Appellant in the marsh. *Id.* at 210-11, 246. Appellant was arrested and brought out of the marsh. *Id.* at 211. Officer Ryan testified that Appellant was immediately "walked to [the officer's] patrol vehicle," and "was placed in the rear" of the car. *Id.* at 212. The windows of the vehicle were rolled up. *Id.* at 213.

Officer Ryan was then notified that a firearm had been found in the "travel lanes" of the highway beside the marsh, approximately 10 to 15 feet away from where Appellant had been found and apprehended. *Id.* at 214, 215. The gun had "some gashes" on the "butt end" as if it had been "dropped at a significant pace or from a significant height…." *Id.* at 213, 214. Officer Ryan testified that he "could tell that [the gun] was obviously recently dropped" because there was "a large gash in it as if it [had been] tossed." *Id.* at 218. "There w[ere] also water spots on the gun itself, and … there was water splatter around the firearm on the ground." *Id.* at 214. Notably, the weather that night was dry. N.T. Trial, 9/25/19, at 8.

- 6 -

Officer Ryan also testified that he observed that "there was no magazine in the firearm." N.T. Trial, 9/24/19, at 217. The officer was asked if he "ever [told Appellant] the firearm was found without a magazine[,]" to which he answered, "No, I did not." *Id.* at 233. The Commonwealth's witness at trial, Tinicum Township Police Detective James Simpkins, testified that he encountered Appellant in the holding cell area of the police station later in the morning on the day Appellant was arrested. N.T. Trial, 9/25/19, at 13. According to the detective, Appellant was "hollering … towards [the detective] like he wanted to talk[,]" at which point Appellant said to him, "why would I have a gun that didn't have a magazine in it?" *Id.* Detective Simpkins testified that he "spoke to Officer Ryan and any other officers that were there [at the station] and asked them if anybody had ever … said anything to [Appellant] … about the magazine not being in the firearm." *Id.* at 15. The detective stated that "they all told me no, that [it] was never said to [Appellant] or … ever said in his presence." *Id.* Detective Simpkins memorialized Appellant's remark in his incident report. *Id.*

We conclude that this evidence, viewed in the light most favorable to the Commonwealth, was sufficient to sustain Appellant's firearm convictions. Contrary to Appellant's claim, the Commonwealth did not merely prove that he was present in the location where the gun was discovered. Rather, it presented sufficient evidence to establish that he knew about the gun, and that he had thrown the gun from the wet area of the marsh onto the roadway. Namely, Officer Ryan saw Appellant reaching toward his pocket as he ran; the

gun was wet, despite the dry weather conditions that night; and Appellant was approximately 10 to 15 feet from the gun, which had marks indicating that it had been thrown or tossed onto the road.

Moreover, Appellant's remark about the gun's not having a magazine proved that he knew about the firearm. While Appellant insists that an officer at the scene could have told him this fact, or he could have overheard it, such an inference would be unreasonable from the evidence presented at trial. Namely, Officer Ryan testified that Appellant was placed in the backseat of the police cruiser immediately after he was discovered and arrested, which was before the officer had investigated the gun. The windows of the police cruiser were closed, indicating Appellant could not have overheard comments about the gun's missing magazine. In addition, Officer Ryan stated that he never told Appellant that the gun did not have a magazine, and Detective Simpkins testified that other officers at the police station told him that they also had not informed Appellant of this fact. From this testimony, the jury reasonably inferred that Appellant knew about the missing magazine because the gun was his.

Given this evidence, we find Appellant's case distinguishable from the decisions on which he relies, in which there was no evidence establishing the defendant's knowledge of the contraband. *See, e.g., Commonwealth v. Fortune*, 318 A.2d 327 (Pa. 1974) (finding the evidence insufficient to prove Fortune constructively possessed drugs found inside her home, where four other people were in the house, Fortune was upstairs while drugs were found

downstairs with the other four individuals, there were no other narcotics found in the residence, and there was no proof Fortune knew about the drugs before police entered the home); *Commonwealth v. Hamm*, 447 A.2d 960 (Pa. Super. 1982) (holding that the Commonwealth did not prove Hamm constructively possessed a gun found on the passenger side floor of a vehicle he was driving, which also contained three other individuals, because Hamm could not have seen the gun and there was no evidence to prove he knew the gun was there); *Commonwealth v. Duffy*, 340 A.2d 869 (Pa. Super. 1975) (holding that the Commonwealth failed to prove Duffy constructively possessed a gun and contraband found in a car that was not his, and in which he was just a passenger, where there was no evidence establishing Duffy knew about the gun and contraband).

Furthermore, the above-cited decisions, and most of the other cases on which Appellant relies, involved situations where other people were present with the defendant in the location where the contraband was discovered. We disagree with Appellant that his case is analogous simply because the gun was found on a public highway. It strains credulity to think that Appellant just happened to flee to a location 10 to 15 feet away from a gun that had been discarded by someone driving on the highway. Moreover, the fact that the gun was wet, while the weather and road were dry, and Officer Ryan's testimony that there were fresh markings on the gun, indicated the gun had been *recently* thrown from the marshy area onto the roadway. No one else

- 9 -

was present in the vicinity of Appellant and the gun. Thus, the cases he cites are not on point.

In sum, we conclude that the totality of circumstantial evidence presented by the Commonwealth was sufficient to establish that Appellant constructively possessed the firearm. Thus, Appellant's first issue warrants no relief.

Next, Appellant argues that the jury's verdict of guilt for the firearm offenses was contrary to the weight of the evidence.

> A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well settled that the jury is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the jury's verdict is so contrary to the evidence that it shocks one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

***Commonwealth v. Houser***, 18 A.3d 1128, 1135-36 (Pa. 2011) (citations and internal quotation marks omitted).

In support of his weight claim, Appellant essentially reiterates his argument that the evidence failed to demonstrate that he constructively possessed the gun. For the above-stated reasons, we disagree. Thus, we discern no abuse of discretion in the court's conclusion that "[t]here is nothing in the record to support [Appellant's] assertion that the verdict is so contrary

to the evidence that i[t] shocks one's sense of justice." Trial Court Opinion, 3/11/20, at 5. Accordingly, Appellant's second issue is meritless.

Judgment of sentence affirmed.

Judge Strassburger did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/12/21