378 A.2d 1232

**COMMONWEALTH of Pennsylvania**

v.

**Robert I. WALTERS, Appellant.**

Superior Court of Pennsylvania.

Submitted April 12, 1976.

Filed Oct. 6, 1977.

James D. Murphy, Assistant Public Defender, Waynesburg, for appellant.

W. Bertram Waychoff, District Attorney, Waynesburg, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

SPAETH, Judge:

Appellant was convicted of receiving stolen property.[1] On this appeal he makes four arguments for reversal.

—1—

█ Appellant argues that he was prejudiced by the prosecutor's allusion in closing argument to appellant's birth out of wedlock. The remark itself is not preserved of record. However, the debate on its propriety is, and from this one may see that it was not totally gratuitous but could have been meant to clarify appellant's relationship to one Harry Paul Briner, described in testimony as appellant's brother, who delivered the stolen goods to appellant's home. Moreover, the trial judge gave a careful cautionary instruction to the jury. On balance we find no reversible error.

—2—

Appellant argues that the stolen property was improperly valued by replacement cost rather than by market value at the time and place of the crime. *See The Crimes Code,* supra note 1; 18 Pa.C.S. § 3903(c) (as amended, 1974). We will not consider this argument, as no objection to the method of valuation was made at trial, *Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1974).

—3—

█ On February 5, 1975, the Commonwealth, on its certification that appellant was a fugitive, was granted leave of court under Pa.R.Crim.P. 224 to present bills of indictment against appellant without a preliminary hearing. Appellant argues that his petition to dismiss the indictments should have been granted, first, because the Commonwealth

1. The Crimes Code, Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1, eff. June 6, 1973; 18 Pa.C.S. § 3925.

in its petition for leave to present the bills alleged no facts in support of its certification, and second, because Rule 224 denied him equal protection of the law.

Rule 224 provides, in pertinent part:

> When the attorney for the Commonwealth certifies to the Court of Common Pleas that a preliminary hearing cannot be held for a defendant because the defendant cannot be found in the Commonwealth . . ., the court may grant leave to the attorney for the Commonwealth to present a bill of indictment to the grand jury without a preliminary hearing.

The Rule codifies a common-law exception to the requirement of a preliminary hearing. *See Commonwealth v. McCloskey*, 443 Pa. 117, 130–31, 277 A.2d 764, 770–771 (1971). Both the language of the Rule ("When the attorney for the Commonwealth certifies . . .") and the cases indicate that the Commonwealth is not required to support its certification by alleging facts that show that the defendant is a fugitive. The cases, in particular, emphasize that the lower courts are to be relied upon to assure that the exception is not abused. "The procedure in such cases . . . is under supervision of the court, and if the process and power is misapplied the court will vindicate itself in restraining its exercise.". *Commonwealth v. Green*, 126 Pa. 531, 537, 17 A. 878, 879 (1889). It is not even required that the Commonwealth's reasons appear of record. *Commonwealth v. Ramsey*, 42 Pa.Super. 25, 32 (1910). These are old cases, and it might be argued that the procedure approved by them should be revised. However, we have not been presented with any evidence that the procedure is being abused.

█ In any event, no abuse appears in the present case, for the Commonwealth's reasons are of record and are sufficient. At trial the investigating officer testified that before filing a complaint he sought appellant for two days, sent out an all-points bulletin for his apprehension, and made "quite a few inquiries," of appellant's wife, mother,

brother-in-law, and attorney, and also of appellant's wife's attorney and the police of a neighboring township.

Appellant's equal protection argument is that Rule 224 denies him discovery afforded other defendants. Thus he notes that all defendants who are given a preliminary hearing gain the benefit of some discovery of the Commonwealth's evidence against them, and that even those whose cases are presented to the indicting grand jury by submission of an investigating grand jury's presentment gain a similar benefit, for although they are denied a preliminary hearing, they have the presentment, which is "a rather complete summary of the grounds on which the investigating grand jury is making its recommendation, and includes descriptions of both the physical evidence and testimony that prompts its action." *Commonwealth v. McCloskey, supra,* 443 Pa. at 139, 277 A.2d at 775.

■ Appellant is correct that there is a difference between the treatment afforded him and that afforded other defendants. However, not every difference in treatment amounts to a denial of equal protection; the difference must be without rational support. *Jefferson v. Hackney,* 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972); *Commonwealth v. Staub,* 461 Pa. 486, 337 A.2d 258 (1975). The reason for the procedure authorized by Rule 224 was articulated by Judge King in 1845 in a charge to a grand jury in Philadelphia. The charge is quoted at length in a note to § 458 of Whart. Crim.Law; in it Judge King said:

Another instance of extraordinary proceeding is where the attorney general, ex officio, prefers an indictment before a grand jury without a previous commitment of the accused. That this can be lawfully done is undoubted. And there are occasions where such an exercise of official authority would be just and necessary; such as where the accused has fled the justice of the state, and an indictment found may be required previous to demanding him from a neighboring state, or where a less prompt mode of proceeding might lead to the escape of a public offender.

The state's interest is not so strong today as it was in 1845, since the Uniform Criminal Extradition Act,[2] adopted by forty-nine states, allows extradition on something less than an indictment, e. g., on an affidavit and arrest warrant. *See* 19 P.S. § 191.3. Nevertheless, the state's interest in a "prompt mode of proceeding" remains: the state should not be compelled by a defendant's flight to wait indefinitely while the evidence fades, or disappears.

—4—

Finally, appellant argues that the evidence was insufficient to prove that he possessed the stolen property and knew or believed it to be stolen.

On or about December 24, 1974, Mr. and Mrs. Glenn McCracken discovered that their house trailer, where they were not living at the time but which was fully furnished and equipped, had been broken into and stripped of its contents. On December 30, acting on an anonymous tip, Officer Albani of the Pennsylvania State Police went to the trailer where appellant and his wife lived, some ten miles distant from the McCrackens' trailer. Appellant was not there, but his wife was and she admitted the officer, who observed items that matched the description of some missing from the McCrackens' trailer: a refrigerator and range, a dinette set, a toaster, a can opener/ice crusher, and an upright sweeper. The officer left to get a search warrant. He returned around 1:30 p. m. but found no one home. He tried to find appellant and his wife until 7:00 or 8:00 p. m. Having had no success, he returned the next morning with the search warrant, a locksmith, and Mr. McCracken. Again no one was home, so the three men entered the trailer and recovered many of the McCrackens' possessions, including, in addition to the refrigerator and range already observed by the officer, a washer and dryer, and miscellaneous articles of clothing and housewares. The dinette set, the toaster, the can opener/ice crusher, and the sweeper were missing but

2. In Pennsylvania: Act of July 8, 1941, P.L. 288, § 1 *et seq.*; 19 P.S. 191.1 *et seq.*

were later recovered in a pigpen on a farm about five miles away.

On January 3, 1975, Officer Albani arrested appellant's wife. He was unable to find appellant, despite a state-wide bulletin for his apprehension. On February 11 appellant came to the State Police Barracks, said that he understood he was being sought by the Police, and was arrested and arraigned.

Appellant's wife testified to the following effect.[3] Appellant left the trailer on December 22, after a fight. On December 23, around 2:00 or 3:00 a. m., appellant's brother, Harry Paul Briner, came to the trailer with a truck-load of goods that he offered to sell for $300 because he needed money to pay a fine. Appellant's wife paid the $300, and she and Briner unloaded the goods—which turned out to be the McCrackens'—into the trailer. Appellant returned on December 26. According to his wife:

> I told him I bought some things. Like I said, we had been arguing and things, and he wasn't doing much talking to me, and I was actually ready to leave him for some things that happened before that don't concern this case, but things had happened. So, he really didn't know where I got them because he was away at the time.

N.T. 59.

**3.** Appellant's wife was a co-defendant. We reversed her conviction in *Comm. v. Walters*, 250 Pa.Super. 392, 378 A.2d 993 (1977), because the indictment was deficient.

Appellant's wife took the stand as a witness for the defense. As may be seen from the recitation thus far, the evidence presented by the Commonwealth was insufficient to prove either possession or knowledge on the part of appellant. However, appellant's demurrer at the close of the Commonwealth's case having been denied, on appeal we must consider the entire record, including evidence produced by the defense. *Commonwealth v. Kohne*, 204 Pa.Super. 78, 203 A.2d 401 (1964), *allocatur refused.* Here, as will appear, evidence produced by the defense supplied the missing proof of possession and knowledge.

We note that appellant and his wife were represented by the same attorney; however, we are not asked to review whether a conflict of interest arose from this dual representation.

On December 30, after Officer Albani's first visit, appellant and Briner came to the trailer. Appellant's wife told them that the officer was looking for appellant. Thereupon appellant left in his truck; in his wife's words, "he didn't want involved." N.T. 70. Appellants' wife did not see appellant again until February 11, when she accompanied him to the Police barracks.

—a—

■ "Absent literal possession, a defendant can be said to be in possession of stolen goods only when it is proved that he exercised conscious dominion over those goods." *Commonwealth v. Davis*, 444 Pa. 11, 15, 280 A.2d 119, 121 (1971). "An individual has constructive possession of an item if he has the power to control and the intent to control the item." *Commonwealth v. Stephens*, 231 Pa.Super. 481, 490, 331 A.2d 719, 723 (1974).

The jury could infer that appellant had the power to control the stolen goods from appellant's proprietary interest [4] in the trailer where the goods were found and from appellant's presence there from December 26 to December 30. *Id.* From appellant's presence the jury could also infer that appellant knew that the goods were in his trailer; the size and amount of the goods are sufficient to distinguish this case from *Commonwealth v. Fortune*, 456 Pa. 365, 318 A.2d 327 (1974), where the Supreme Court said, "We cannot assume that a resident of a home, where guests [here, appellant's wife] are present, knows of the full contents of the premises." *Id.* 456 Pa. at 369, 318 A.2d at 329.

It is true that evidence of appellant's knowledge of the presence of the goods was not of itself necessarily sufficient. This is demonstrated by our decision in *Commonwealth v. Stephens, supra,* where we held that a defendant's knowledge was too recently acquired to permit the inference that he intended to control contraband hidden in the back room of his store. Here, appellant had (according to his wife's

4. The record does not show whether the Walters were owners or tenants of the trailer.

testimony, and there was no evidence to rebut) four days in which he knew of the presence of the goods in question in his home. Equipped with this knowledge, did he intend to control the goods? While there is no evidence that appellant used any of the goods, nevertheless, considering the length of time appellant spent in the trailer, and the everyday usefulness of the goods, the jury could infer that appellant intended to control them.

—b—

■ Our Supreme Court has held that "a permissible inference of guilty knowledge may be drawn from the unexplained possession of recently stolen goods . . . ." *Commonwealth v. Williams,* 468 Pa. 357, 365, 362 A.2d 244, 248 (1976) (footnotes omitted), *rev'g,* 233 Pa.Super. 449, 336 A.2d 411 (1975). The Court also stated that the inference may be drawn as well from other circumstances, such as "the accused's conduct at arrest and *his conduct while in possession of the goods* . . . ." *Id.* 468 Pa. at 367, 362 A.2d at 249 (emphasis added).

Here, three factors combined to warrant the inference of guilty knowledge. First, the goods were recently stolen: the McCrackens last saw them on December 20, so that when appellant came into possession of them only six days at most had passed. This is a very short time for such bulky items to pass into trade channels. *Cf. Commonwealth v. Williams, supra* (car; twelve days). Second, appellant's and his wife's possession of the goods was unexplained. True, appellant's wife offered an explanation, but "even if the accused offers an explanation, the trier of fact may consider the possession as unexplained if he determines the explanation is unsatisfactory." *Id.* 468 Pa. at 367, 362 A.2d at 249, *citing Barnes v. United States,* 412 U.S. 837, 846, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973). Here we know that the jury did find the explanation unsatisfactory, for it found appellant's wife guilty of receiving stolen goods. *See* note 2, *supra.* Third, appellant left his home, apparently in a hurry, when he learned from his wife that Officer Albani was looking for

him. *Commonwealth v. Williams, supra,* 468 Pa. at 368, 362 A.2d at 250; *Commonwealth v. Murray,* 246 Pa.Super. 422, 429, 371 A.2d 910, 913 (1977). *Williams* and *Murray* are both stronger cases, for in each the suspect fled from or in a stolen automobile when he saw the police chasing him, whereas here it is arguable that appellant left the trailer because he realized that his wife, with whom he was having marital difficulties, and his brother were getting themselves in serious trouble and thereby threatening to associate him with their handling of the stolen goods. Perhaps, then, appellant's departure was not "totally inconsistent with innocent behavior." *Commonwealth v. Murray, supra,* 246 Pa.Super. at 428, 371 A.2d at 913. The jury, however, was not bound to accept this argument, and, in combination with the first two factors discussed, appellant's departure from the trailer could be regarded by the jury as probative of guilty knowledge.

Affirmed.