406 A.2d 1112

**COMMONWEALTH of Pennsylvania**

v.

**Charles M. GORE, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 15, 1978.

Decided June 29, 1979.

Donald Levin, Philadelphia, for appellant.

Robert B. Lawler, Assistant District Attorney, Chief, Appeals Div., Philadelphia, for Commonwealth, appellee.

Before PRICE, HESTER, and HOFFMAN, JJ.

PRICE, Judge:

Following a non-jury trial, appellant was convicted of three counts of receiving stolen property.[1] His post-trial motions for arrest of judgment or a new trial were denied by the court below, and this appeal challenging sufficiency of the evidence was timely filed. When the court below authorized its opinion in compliance with Pa.R.A.P. No. 1925(a), it determined that judgment should be arrested on two of the three counts. Therefore, appellant appeals from his conviction of only one count of receiving stolen property, on which he was sentenced to nine to twenty-three months of imprisonment.

Viewing the evidence in the light most favorable to the Commonwealth, the following was adduced at trial. On April 14, 1977, at approximately 5:00 p. m., Detective Frank Stewart of the Philadelphia Police Department Auto Squad, accompanied by a second officer, went to a two-story private garage at 20th and Venango Streets. The officers were prevented from gaining access to the inside of the premises by a padlocked cyclone fence that opened onto 20th Street. A second entrance, however, a ramp leading from the Venango Street side to the second-story level of the garage, was accessible to them. While ascending the ramp, the officers were able to view the lower level of the building. It consisted of a fifteen by twenty-five foot rectangular courtyard, and contained two rows of individual stalls on the Venango Street side, one row having egress to Venango Street only and the other opening onto the courtyard; several other stalls were situated on the 20th Street side of the building. Other parking facilities were located on the second floor. The officers saw a 1975 truck cab inside one of the stalls, a late model Ford engine on a block, and a shed in which floor mats, new car seats, rugs, car frames, dashboards, broken glass, and other items were heaped. When the officers descended the inner staircase to the first level,

1. 18 Pa.C.S. § 3925.

they observed a number of vehicles that were described by Detective Stewart as "shells, stripped completely out, cut in half." (N.T. 45).

As the officers proceeded through the area, they heard a noise outside the garage and saw an automobile being driven away. The officers secreted themselves behind one of the garage partitions. The chain on the gate rattled, the cyclone fence was opened and closed, and the chain rattled a second time. The officers peered from behind the wall and observed appellant, inside, relock the chain. Appellant was immediately arrested and his keys seized. One key matched the cyclone fence lock, a second key unlocked a stall on the second level of the building, and a third key unlocked the only garage stall on the first level that was locked. Inside the first-floor garage, the officers saw a freezer, six or seven new tires, three car radios, a box of tools, an acetylene burning torch with hoses and a brass tip, and some debris. Detective Stewart testified that he could not identity the tires or radios as belonging to any specific automobiles. (N.T. 93). An acetylene and an oxygen tank were located on the first level in front of an open stall housing a stolen Chevrolet Nova, which appellant was found guilty of receiving and herein appeals.

Detective Stewart testified that cars in the various stalls were disassembled by means of a blow torch. He judged from his experience with the Auto Squad that a "cutting" operation was underway, whereby stolen cars were dismantled for their salable parts. He indicated that although junkyards purchase wrecked late-model cars for parts, such legitimate businesses normally post signs outside the premises. None of the cars in this garage appeared to be damaged by accident, and no sign was posted to indicate the nature of the business being conducted. On cross-examination, Detective Stewart was asked, "From what you could observe, this was the work of more than one person, wasn't it?" The officer responded, "Oh, it had to be." (N.T. 76). Serial numbers on the frames of several of the vehicles, including the Nova, were relayed through police channels. The offi-

cers learned that the vehicles had been stolen. Detective Stewart testified that the only cutting material on the first level of the garage, other than the oxygen and acetylene tanks, was found in the locked garage for which appellant possessed a key.

Appellant testified that he and his brother owned a variety store, and that in November 1976, he leased the locked compartment on the first floor for storage of business goods. The garage is located approximately twenty blocks from the store, and when appellant finished work for the day, he would occasionally drive by the garage to inspect the area for possible signs of theft. On the day in question, appellant testified that he noticed that the chain on the cyclone fence was turned backwards, and that his locked stall was opened. After entering the courtyard to investigate, appellant was apprehended by the officers. Although appellant's brother also had a key to the locked compartment, appellant testified that, "He doesn't even bother to go by there." (N.T. 114). Appellant contended that the only items that he stored in the stall were venetian blinds, some toys, two freezers, an air conditioner, and three tires. He denied the presence of car radios, tools or torch accessories in the stall. Appellant maintained that he never looked into any of the other stalls and never noticed the car seats in the shed. The last time he had been to the garage, according to his testimony, was several weeks prior to the April 14 incident.

Appellant maintained in the court below that he leased the subject garage space from a Mr. Harris, who provided him with keys to the cyclone fence and to the first level garage. Appellant had no written lease and paid Mr. Harris when he saw him occasionally on the premises. Appellant never observed anyone unlock the fence and did not personally know if anyone else possessed a key. The only other lessee known to appellant, a man named Rubin, stored carpet in another first-floor stall.

When Detective Stewart was asked if he knew who the owner of the garage complex was, he testified that on the day preceding trial, he investigated and learned that

appellant was indeed not the owner. He admitted that he had not personally interrogated the owner and did not make any identification of tenants. When asked on cross-examination, "So all you did was arrest the first man to come to the door?", he responded, "That's correct." (N.T. 96).

"The test of sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth and drawing the proper inferences favorable to the Commonwealth, the trier of fact could reasonably have found that all of the elements of the crime had been established beyond a reasonable doubt." *Commonwealth v. Rose,* 463 Pa. 264, 267–68, 344 A.2d 824, 825 (1975) (citations omitted).

Receiving stolen property is defined as follows:

"A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner." 18 Pa.C.S. § 3925(a).

It is well settled that in order to establish the offense of theft by receiving stolen goods, the Commonwealth must establish that: (1) the goods are stolen; (2) the defendant received such goods; (3) the defendant knew them to be stolen or had reasonable cause to know that they were stolen. *Commonwealth v. Davis,* 444 Pa. 11, 280 A.2d 119 (1971). Appellant's argument here is that the Nova automobile which he was convicted of receiving was located in the open courtyard of the premises, that other persons had equal access to the area and the goods, and that the automobile was not in the specific location of his rented stall, all of which warrant a finding that appellant was not in possession or control of the goods. Conversely, the Commonwealth maintains that while appellant was not found to be in actual possession, his conviction may be sustained on the theory of constructive possession. "An individual has constructive possession of an item if he has the power to control and the intent to control the item." *Commonwealth v. Ferguson,*

231 Pa.Super. 327, 331–32, 331 A.2d 856, 859 (1974) (citations omitted). When there is no direct evidence of power to control, it may sometimes be inferred from the surrounding circumstances.

We deem it appropriate to review some of the prior decisions deciding the identical issue here presented. In *Commonwealth v. Stephany,* 228 Pa.Super. 184, 323 A.2d 368 (1974), this court upheld the appellant's conviction of burglary, larceny, receiving stolen goods, and conspiracy. There, stolen goods were found in the locked trunk of the appellant's car several days after a burglary. Stephany was in possession of the only key to that trunk. We found that proof of control was satisfied by the evidence of the car's ownership and the appellant's possession of the key.

Similarly, in *Commonwealth v. Martin,* 252 Pa.Super. 265, 381 A.2d 491 (1977), this court held that there were sufficient circumstances from which the appellant's dominion and control over stolen property could be found. Stolen government bonds and a stolen driver's license were found in a closed dresser drawer in the appellant's bedroom. In reaching our decision, we relied upon the fact that the officer who searched the room found no evidence of anyone else having used the room, and the unique nature of the stolen property.

*Commonwealth v. Walters,* 250 Pa.Super. 446, 378 A.2d 1232 (1977), dealt with a defendant's conviction for receiving the stolen contents of a house trailer. The defense argued that the defendant's brother brought the truckload of large appliances and miscellaneous goods to the appellant's house trailer while the appellant was not at home. The appellant's wife agreed to purchase the lot from him, and the goods were moved into the trailer. Several days later, the appellant returned home, and remained there from December 26th through the 30th. Our court declared:

"The jury could infer that appellant had the power to control the stolen goods from appellant's proprietary interest in the trailer where the goods were found and from appellant's presence there from December 26 to December 30." *Id.,* 250 Pa.Super. at 453, 378 A.2d at 1236 (footnote omitted).

However, in *Commonwealth v. Davis, supra,* the supreme court found the evidence insufficient to uphold the appellant's conviction of receiving stolen dresses. The dresses were uncovered by police in a locked basement cupboard in a house owned by the appellant's former wife and her brother and sister-in-law, none of whom resided there. The appellant's girlfriend lived in a first-floor apartment, in which the appellant kept some of his clothes and was known to spend the night occasionally. The court emphasized that there was no proof of the appellant's exercise of conscious control or dominion. The appellant was not the owner of the house; no lease, or utility or rent receipts were introduced into evidence. The appellant had no keys, and he could be deemed nothing more than a visitor to the premises. The court rejected an inference of possession to be established by mere proximity.

Many of the cases concerning possession and control evolve from indictments under The Controlled Substance, Drug, Device and Cosmetic Act.[2] For example, in a case in which drugs were found in the defendant's place of business, control and knowledge could be found because there was no evidence that others shared the business operation with him. Further, the places wherein the drugs were located were accessible only to the garage operator. *Commonwealth v. Ferguson, supra. See also, Commonwealth v. Jones,* 250 Pa.Super. 236, 378 A.2d 914 (1977). On the other hand, when contraband is found in a place equally accessible to many, and none is found with contraband on his person, the mere presence of one at the scene will not justify a conclusion of conscious dominion or control. *See Commonwealth v. Fortune,* 456 Pa. 365, 318 A.2d 327 (1974); *Commonwealth v. Tirpak,* 441 Pa. 534, 272 A.2d 476 (1971); *Commonwealth v. Tine,* 221 Pa.Super. 318, 292 A.2d 483 (1972); *Commonwealth v. Schulhoff,* 218 Pa.Super. 209, 275 A.2d 835 (1971).

While drug possession cases concern an offense peculiarly personal in nature, the cases are somewhat instructive in the

2.  The Act of April 14, 1972, P.L. 233, No. 64, § 1 (35 P.S. § 780–101) *et seq.*

present appeal, in which joint access is claimed by appellant and in fact conceded by the Commonwealth. While it is true that appellant had a key to the first-level fence, it is readily acknowledged by the prosecution that appellant is not the owner of the complex. Further, Detective Stewart admitted that he knew of at least one other lessee, an individual who stored carpet in the building, who also necessarily had equal access to the common area in which the Nova was found. The crucial tie-in according to the Commonwealth's evidence was the existence of an acetylene hose and tip in appellant's locked stall. While there was testimony that these were the only such devices located on the first floor, there was no testimony that such items are not interchangeable, or that these particular items could be or had been used with the tanks located near the Nova.

Although the facts as set forth in the Commonwealth's appellate brief might well be sufficient upon which to convict appellant of receiving, it is our opinion that unjustified license was utilized to so slant the evidence adduced at trial. Certainly there was no sufficient evidence produced to merit the conclusion that "defendant had exclusive access to, and was in exclusive use of the situs of the stolen Nova." (Appellee's Brief at 13). Similarly, the Commonwealth states that appellant was the only one who had a key to the locked gate; the evidence does not support this conclusion. Finally, the Commonwealth declares, "The unrebutted evidence established that no one other than defendant used the premises in any way." (Appellee's Brief at 10). Contrary to these assertions, we find the evidence of appellant's possession and control seriously lacking. The Commonwealth's evidence established that the cutting operation was believed to be the work of more than one individual; that at least one other person had access to the first level equal to appellant's; and that the reason for arresting appellant was very simply that he was the first one to enter the premises during the officers' investigation. Appellant, by the Commonwealth's own evidence, did not have exclusive possession or control, and we find the circumstantial

evidence attempting to establish constructive possession woefully lacking. Accordingly, we vacate the judgment of sentence and order appellant discharged.