J-S64023-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| NATHAN ALEXANDER LEWIS | |
| Appellant | No. 344 MDA 2015 |

Appeal from the Judgment of Sentence of December 30, 2014
In the Court of Common Pleas of Lancaster County
Criminal Division at No.: CP-36-CR-0005077-2013

BEFORE:  FORD ELLIOTT, P.J.E., WECHT, J., and FITZGERALD, J.[*]

MEMORANDUM BY WECHT, J.:               **FILED DECEMBER 18, 2015**

Nathan Lewis appeals his December 30, 2014 judgment of sentence. Lewis challenges the sufficiency of the evidence offered by the Commonwealth in support of his conviction of receiving stolen property, 18 Pa.C.S. § 3925.  We reverse Lewis' receiving stolen property conviction, vacate the judgment of sentence, and remand for resentencing on his remaining conviction for carrying a concealed firearm without a license, 18 Pa.C.S. § 6106.

On November 4, 2014, following a jury trial, Lewis was convicted of the above-enumerated offenses.  The trial court summarized the evidence presented at Lewis' trial as follows:

---

[*]     Former Justice specially assigned to the Superior Court.

On September 8, 2013, at approximately 2:38 a.m., Officer Matthew Caple observed two males fighting outside a pizza shop, with a taller male (later identified as Gabriel Solomon) restraining [Lewis] in a bear hug. Officer Caple instructed both men to get on the ground, but neither complied. Mr. Solomon told Officer Caple that he could not let go of [Lewis] because [Lewis] had a gun. After Mr. Solomon's statement about a gun, people across the street began shouting that someone had a gun. Officer Caple ordered Mr. Solomon to run and leave the immediate area. Mr. Solomon hesitated, and "looked like he was scared." When other officers arrived and gave commands, Mr. Solomon released [Lewis] and backed away. Officer Caple then tackled [Lewis] and took him into custody with the help of others.

After Officer Caple had restrained [Lewis], he noticed that one of the other police officers assisting him had recovered a gun. Officer Caple never saw a firearm in [Lewis'] hands or on [Lewis'] person while the scuffle with Mr. Solomon was taking place. Officer Caple overheard Mr. Solomon giving an account to another police officer about what had transpired. Officer Caple then briefly left the scene to review videotape of the fight and discovered that a person appearing to be Mr. Solomon and at least one other individual had been "beating" and kicking [Lewis].

Officers [Mark] Gehron and [Thomas] Cole also responded to the scene of the fight after receiving a dispatch that several subjects were holding a male on the ground and assaulting him. Officer Gehron approached the scene from a different direction then Officer Caple. Officer Gehron observed four men involved in an altercation, two of whom backed off immediately when the police arrived. Officer Gehron identified [Lewis] as the person who was being forcibly held by Mr. Solomon.

[Lewis] was wearing a hooded sweatshirt with a large pocket on the front. Officer Gehron saw that Mr. Solomon placed one of his hands on the outside of [Lewis'] sweatshirt pocket, holding what appeared to be a pistol inside [Lewis'] sweatshirt pocket. Officer Cole, who was located near Officer Gehron, saw a gun in [Lewis'] sweatshirt front pocket. Officer Cole observed Mr. Solomon's left hand near the trigger of the gun and [Lewis'] right hand gripping the rear of the gun; both men were struggling for control of the firearm.

Officer Cole ordered [Lewis] and Mr. Solomon to the ground three times. Mr. Solomon made eye contact with Officer Cole and displayed a look of "terror or fear," and shortly thereafter Mr. Solomon finally retreated and stepped aside. [Lewis] still struggled to remove the revolver from his sweatshirt pocket, despite Officer Cole's commands to "get on the ground." Once [Lewis] had been taken into custody by Officer Caple, Officer Gehron removed the gun from [Lewis'] sweatshirt and contacted radio dispatch to determine, based on the gun's serial number, if the weapon was stolen.

Officer Gehron was informed that the firearm was reported stolen to the East Earl Township Police Department in Lancaster County. Officer Cole contacted Officer Knepper[1] from East Earl Township and confirmed that the gun was stolen. Officer Gehron submitted an inquiry to the Pennsylvania State Police to determine whether [Lewis] had a valid license to carry a firearm on the date of [Lewis'] arrest. The Pennsylvania State Police confirmed that [Lewis] was not licensed to carry a firearm on the date of his arrest.

The Charter Arms revolver seized from [Lewis] had been stolen in November, 2012, in East Earl Township from a vehicle owned by Chad Smith. Mr. Smith identified his revolver based on the serial number of the weapon matching the serial number on the purchase paperwork which Mr. Smith had retained. Mr. Smith had never seen [Lewis] before trial and did not sell, loan, or authorize anyone, including [Lewis], to use or take his revolver.

The Commonwealth and [Lewis] stipulated that [Lewis] was unable to pass a background check and was unable to legally purchase a handgun prior to the date on which he was arrested.

Detective Dean Miller of the Lancaster County District Attorney's Office provided the jury information regarding his experience in law enforcement, including the investigation of cases involving stolen firearms. He testified that a person who is unable to pass a background check to purchase a firearm would be unable to obtain a license to carry firearms in Pennsylvania. Detective Miller explained that persons unable to legally purchase a

---

[1] Officer Knepper's first name does not appear in the certified transcripts.

> handgun may still obtain one illegally. His experience has shown that more often than not, firearms which are purchased on the street are stolen, and that stolen firearms often make their way to Lancaster County.

Trial Court Opinion ("T.C.O"), 4/17/2015, at 2-5 (references to the notes of testimony omitted).

On December 30, 2014, the trial court sentenced Lewis consecutively to two to ten years' incarceration on the receiving stolen property conviction, and to three and one half to seven years' incarceration on the firearm conviction. In the aggregate, Lewis received a sentence of five and one half to seventeen years in prison. On January 7, 2014, Lewis filed a post-sentence motion, which the trial court denied on January 21, 2015.

On February 20, 2015, Lewis filed a notice of appeal. In response, the trial court directed Lewis to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On March 16, 2015, Lewis timely filed a concise statement. On April 20, 2015, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a).

Lewis raises the following issue for our review: "Was the evidence presented by the Commonwealth insufficient to prove beyond a reasonable doubt that [] Lewis was guilty of receiving stolen property, where the evidence did not establish that he knew the gun in his possession was stolen, or believed that it probably had been stolen?" Brief for Lewis at 6.

When reviewing challenges to the sufficiency of the evidence, our standard of review is as follows:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict[-]winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder['s]. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Phillips*, 93 A.3d 847, 856 (Pa. Super. 2014) (citations omitted). Further, in viewing the evidence in the light most favorable to the Commonwealth as the verdict-winner, we must give the prosecution the benefit of all reasonable inferences to be drawn from the evidence. *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000).

A person is guilty of receiving stolen property "if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner." 18 Pa.C.S. § 3925(a). Stated otherwise, in order for the Commonwealth to prove receiving stolen property beyond a reasonable doubt, the Commonwealth must establish that: (1) the property was stolen;

(2) the defendant was in possession of the property; and (3) the defendant knew or had reason to believe that the property was stolen. *Commonwealth v. Matthews*, 632 A.2d 570, 571 (Pa. Super. 1993).

Lewis does not challenge the first two elements. Rather, Lewis focuses his argument upon whether the Commonwealth produced sufficient evidence to prove beyond a reasonable doubt that he knew, or had reason to believe, that the firearm was stolen. "[A] permissible inference of guilty knowledge may be drawn from the unexplained possession of recently stolen goods without infringing upon the accused's right of due process or his right against self-incrimination, as well as other circumstances, such as the accused's conduct at the time of arrest." *Commonwealth v. Foreman*, 797 A.2d 1005, 1012 (Pa. Super. 2002) (quoting *Commonwealth v. Williams*, 362 A.2d 244, 248-49 (Pa. 1976)). Conversely, "mere possession of stolen property is insufficient to prove guilty knowledge, and the Commonwealth must introduce other evidence[,] which can be either circumstantial or direct, that demonstrates that the defendant knew or had reason to believe that the property was stolen." *Foreman*, 797 A.2d at 1012 (citing *Matthews*, 632 A.2d at 571).

> This additional evidence can include the nature of the goods, the quantity of the goods involved, the lapse of time between possession and theft, and the ease with which the goods can be assimilated into trade channels. Further, whether the property has alterations indicative of being stolen can be used to establish guilty knowledge. Finally, even if the accused offers an explanation for his possession of stolen property, the trier of fact may consider possession as unexplained if it deems the explanation unsatisfactory.

*Foreman*, 797 A.2d at 1012-13.

Recently, in **Commonwealth v. Robinson**, ___ A.3d ___, 2015 WL 7294584 (Pa. Super. Nov. 19, 2015) (*en banc*), an *en banc* panel of this Court addressed a case with analogous factual and legal circumstances to the case *sub judice*. In **Robinson**, police responded to a domestic dispute involving the appellant and two women. One of the women informed the police upon their arrival that the appellant was carrying a firearm. The police patted the appellant down and located a revolver, which turned out to be stolen. The appellant was not licensed to conceal the weapon on his person. *Id.* at *1.

The owner of the weapon had purchased it years before, and kept it in a safe in his basement. However, the last time that he had seen the weapon was in 2010. He did not know that it had been stolen until the police informed him that it was found on the appellant in 2013. The owner did not know the appellant and had not given the weapon to him. *Id.*

After a jury trial, the appellant was convicted, *inter alia*, of receiving stolen property. Like Lewis in the instant case, the appellant contended that, aside from possession of the revolver, no evidence existed to prove that he knew, or should have known, that the gun was stolen. The *en banc* panel unanimously agreed with the appellant and vacated his receiving stolen property conviction. *Id.* at *2, *9.

The panel first explained that direct proof of knowledge that a particular item is stolen is rare, at best. *Id.* at *3. Thus, to prove someone

guilty of receiving property, the Commonwealth must procure and prove circumstantial evidence to support an inference of "guilty knowledge." ***Id.*** The panel then traced the somewhat tortured case history regarding inferences of guilty knowledge their emergence to the contemporary analyses, focusing primarily upon the time period separating the theft of the item and the person's possession of that item. Originally, juries were permitted to presume that a person knew that an item was stolen when the defendant possessed that item near in time to when it was stolen, and the person could not explain how he came to possess the item. ***Id.*** at *4. However, such presumptions later were found to be constitutionally insufficient. ***Id.*** (citing ***Commonwealth v. Owens***, 271 A.2d 230 (Pa. 1970)).

Shortly after its decision in ***Owens***, our Supreme Court reaffirmed the principle that a jury could not presume a guilty knowledge based upon "recency plus lack of explanation," but held that a jury could infer guilt under such circumstances. ***Commonwealth v. Shaffer***, 288 A.2d 727, 736 (Pa. 1972). The Court reaffirmed ***Shaffer*** in ***Commonwealth v. Williams***, 362 A.2d 244 (Pa. 1976). The ***Robinson*** panel explained the Court's rationale in ***Williams***, as follows:

> [In ***Williams***,], our Supreme Court again affirmed the "recency plus lack of explanation" inference for receiving stolen property, holding that "a permissible inference of guilty knowledge may be drawn from the unexplained possession of recently stolen good without infringing on an accused's right of due process or his right against self-incrimination." ***Williams***, 362 A.2d at 248-49. ***Williams*** involved an appellant's unexplained possession of a

- 8 -

stolen car just twelve days after its theft. *Id.* at 250. In reversing the decision of this Court and reinstating the judgment of the trial court on the conviction of receiving stolen property, the Supreme Court in *Williams* indicated that "[c]ircumstantial evidence from which guilty knowledge can be inferred in sufficient to sustain a conviction if the underlying circumstantial evidence is sufficiently strong to support the inference beyond a reasonable doubt." *Id.* at 248.

In assessing the strength of the inference, the Supreme Court indicated that mere possession of stolen property, without more, is not sufficient circumstantial evidence to support an inference of guilty knowledge. *Id.* at 248 n.7 ("[M]ere possession is insufficient to establish or permit an inference of guilty knowledge . . ."). Proof that the goods were recently stolen, however, may provide the jury with sufficient circumstantial evidence to support an inference of guilty knowledge, since the "circumstances of possession as presented by the Commonwealth" (the recency of the theft) suggest "an explanation for the possession" (that the accused was the thief []). *Id.* at 248. In other words, a jury may infer guilty knowledge from evidence of recency, which in turn may require the appellant to offer an alternative explanation for his possession of the stolen item. It is the Commonwealth's circumstantial evidence of guilty knowledge (recency) that compels the need for an explanation, since in the absence of an explanation the jury may infer guilty knowledge beyond a reasonable doubt based upon the Commonwealth's evidence. Even if the accused offers an explanation, the jury may nevertheless find it unsatisfactory and reach a finding of guilty knowledge based upon the recency of the theft. *Id.*

*Robinson*, 2015 WL 7294584, at *5 (citations modified; footnote omitted).

With this backdrop in place, the panel in *Robinson* listed various cases from this Court in which we considered receiving stolen property cases after *Williams*. The panel divided the cases into three broad categories: (1) cases in which we held that mere possession of a stolen item, without more, was insufficient to prove guilty knowledge; (2) cases in which the

brevity of the duration between the theft of the item and the person being found in possession of that item was deemed sufficient to infer a guilty knowledge, and (3) cases in which circumstances other than recency was the predominant factor in proving a guilty knowledge, such as where serial numbers on items were altered, where the person attempted to sell the stolen item, where VIN numbers on vehicles were obliterated, and where the person attempted to flee from the police with the stolen item. *Id.* at *5-6 (listing cases).

The panel then turned to the facts at hand and held that "the Commonwealth presented no evidence that would support an inference of guilty knowledge." *Id.* at *6. The panel noted that the Commonwealth could not satisfy the recency inquiry, because the theft occurred three years before the appellant was found in possession of the gun. The panel also pointed out the fact that the serial numbers on the gun had not been altered or obliterated, and that the appellant did not attempt to flee or display any other *indicia* of a guilty demeanor when arrested. The Commonwealth offered no evidence "regarding how, when, or where [the appellant] acquired the handgun, or from whom. Instead, the Commonwealth proved only that [the appellant] possessed stolen property, which, as indicated, by itself is not sufficient to prove guilty knowledge." *Id.*

The panel next addressed the trial court's finding that the appellant's failure to register, or otherwise obtain lawful ownership of, the weapon constituted evidence of guilty knowledge. The panel decisively rejected that

premise, stating that "it reflects a basic misunderstanding of Pennsylvania law with respect to the sale of firearms and that absence of paperwork to demonstrate firearm ownership." ***Id.*** at *7. The panel further explained that, "no requirement exists under Pennsylvania law to obtain a license, permit, or other permission to own a firearm, and the Commonwealth does not maintain a registry of ownership of firearms. Likewise, no state agency issues any documentation evidencing the ownership of a firearm." ***Id.***

Finally, the panel rejected the Commonwealth's argument that, because the appellant did not have a license to carry the weapon, the jury could have inferred that the appellant possessed the requisite guilty knowledge. "Ownership of a handgun is not a prerequisite to the issuance of a license to carry, and the license is not issued for a particular handgun. Conversely, a person may own a handgun without obtaining a license to carry, as was true of the [victim of the theft] in this case." ***Id.*** at 9.

Thus, the *en banc* panel held that the Commonwealth's proof established nothing more than the appellant's possession of a stolen weapon. The panel vacated the receiving stolen property conviction and remanded for resentencing on the appellant's remaining conviction. ***Id.***

The circumstances in the case *sub judice* are strikingly similar to those in **Robinson**. Here, like in **Robinson**, Lewis was found to be in possession of a stolen firearm. The theft occurred approximately one year prior to Lewis' arrest. The Commonwealth has not proven that the passage of one year is sufficiently recent to justify an inference that Lewis possessed the

- 11 -

requisite guilty knowledge, and the cases cited in **Robinson** do not compel such a result. ***See e.g. Commonwealth v. Hogan***, 468 A.2d 493, 498 (Pa. Super. 1983) (*en banc*) (holding that four weeks between the theft and possession was sufficiently recent to justify the inference); ***Commonwealth v. Waters***, 378 A.2d 1232, 1236-37 (Pa. Super. 1977) (holding that six days was sufficient to justify the inference). In light of Pennsylvania case law, one year simply is too long after the theft to infer without more that Lewis knew or should have known that the gun was stolen.

The Commonwealth also adduced no evidence that the serial number on the gun was altered or modified in any way, or established any other physical aspect of the gun that would have identified the gun as stolen to its possessor. Furthermore, nothing about Lewis' demeanor or actions upon his arrest yielded any evidence that suggested guilty knowledge. Finally, the Commonwealth, as it did in **Robinson**, attempted to prove guilty knowledge by the fact that Lewis did not, and was unable to, obtain a license to carry a concealed firearm. However, the **Robinson** panel rejected this argument, and we must do so here.

In short, the facts and circumstances of this case substantially mirror those in **Robinson**. The Commonwealth has presented no evidence to prove that Lewis knew or should have known that the gun was stolen. At best, the evidence proved that Lewis merely possessed a stolen gun, which is insufficient by itself to prove a person guilty of receiving stolen property. Consequently, we reverse Lewis' receiving stolen property conviction, and

we remand for resentencing on his remaining conviction for carrying a concealed weapon without a license. Lewis has not challenged that conviction or the sentence imposed upon that conviction.

Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/18/2015