J-A23006-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
LORINDA JIGGETTS :
:
Appellant : No. 89 WDA 2019

Appeal from the Judgment of Sentence Entered, December 4, 2018,
in the Court of Common Pleas of Fayette County,
Criminal Division at No(s):  CP-26-CR-0000162-2018.

BEFORE:  BENDER, P.J.E., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY KUNSELMAN, J.:                     **FILED JANUARY 3, 2020**

Lorinda Jiggetts appeals from the judgment of sentence imposed after she was found guilty of two counts each of receiving stolen property and possession of a controlled substance, and one count each of theft of property lost, and possession of unlawful body armor.[1]  After review, we affirm in part and reverse in part and remand for a new trial on all charges except the controlled substance charges.

The trial court provided the facts of this case as follows:

On September 5, 2015, Uniontown City Police Officer Jamie Holland was dispatched to Pershing Court on the report of a shooting.  [Jiggetts] was standing across the street from 63 Pershing Court, her residence, and [when asked by police who was

---

[1] 18 Pa.C.S.A. § 3925(a), 35 Pa.C.S.A. § 780-113(a)(16), and 18 Pa.C.S.A. §§ 3924 and 907(c).  Jiggetts was found guilty of possession of morphine and dihydrocodone.  She was acquitted of a possession of heroin charge and the court entered a *nolle prosequi* on a possession of marijuana charge.

in her home, Jiggetts] stated that no one was in her apartment. Prior to being granted a search warrant for [Jiggetts'] apartment yet while visibly observing the building, Officer Holland testified that five or six people exited the residence.

Once access to the apartment was granted pursuant to a search warrant, the Uniontown City policemen entered. A utility bill from West Penn Power was located on the refrigerator with a handwritten note stating "Please help. There are six guys here using all electric. Should pitch in."

A Taurus PT model 140, .40 caliber pistol, was located in the laundry area above the washing machine inside a shoebox with a live round in the chamber and nine live rounds in the magazine inserted in the firearm. The Taurus firearm was determined to be the same gun reported stolen by Marissa Roll on April 21, 2015.

In the dining room above a cabinet was located a plastic baggie of pills, namely five purple pills marked MS30 [morphine] and one white oval pill marked U 03 [dihydrocodone]. In both upstairs bedrooms, the police found green stamp bags of heroin. In the master bedroom, the officers located a Ruger LCP .380 under the box spring of the bed loaded with one live round in the chamber and six live rounds in the magazine. The Ruger firearm was traced to that reported missing by Brent Baker on June 17, 2015. Officer Holland also testified that a bullet proof vest was located on the floor near the bed in the master bedroom. An unregistered Ruger 10-22 rifle was next to the window in the master bedroom and a Heritage .22 revolver was located in the closet. The Heritage was registered to Robert Gratson. Also found in the house were a fully loaded Tapco magazine behind the washing machine and a Glock Model 26 nine-millimeter registered to Kathy Mudery.

Following a search of the apartment, [Jiggetts] was brought into her living room and questioned on which areas of the house were hers, to which she responded that the master bedroom was her room. [Jiggetts] named Malcom Cooper, Roy Johnson, and Lance Campbell as also staying at her residence.

As to ownership of the weapons, the Commonwealth presented testimony of Marissa Roll who stated that her .40 caliber Taurus handgun with serial number beginning "s-e-x" was stolen in 2012 or 2013 and she reported the same to the Uniontown City Police. Brent J. Baker also testified that his Ruger LCP .380 handgun was

lost in 2015 in Lemont Furnace when he was quad riding and he also reported the missing gun. [Evidence was presented showing that the Glock 26 handgun registered to Kathy Mudery had been reported stolen.]

With respect to the residence in question, Shalyce Blankenship, the property manager of Pershing Court Manor, now known as Beeson Square Apartments, testified that [Jiggetts] resided at 63 Pershing Court in September 2015 and that Paula Hoffman was registered as her only cotenant.

A stipulation was entered that DNA testing on the Taurus pistol and Glock 26 would identify male DNA.

Trial Court Opinion, 3/15/19, at 2-4.

Following trial, the jury convicted Jiggetts of receiving stolen property in relation to the Ruger and Glock, theft of property lost in relation to the Taurus, possession of unlawful body armor, and possession of a controlled substance. Jiggetts was sentenced to 2 years of probation. Jiggetts filed a post-sentence motion claiming, *inter alia*, that her convictions were against the weight of the evidence, which the trial court denied.

Jiggetts timely appealed. Both Jiggetts and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

On appeal, Jiggetts raises five issues for our review as follows:

1. Whether the evidence presented at trial was legally and factually sufficient to prove that the appellant committed the crimes of receiving stolen property and theft of property lost or mislaid, when the Commonwealth did not demonstrate that the appellant, knew, or should have known, that the firearms in question were stolen . . . .

2. Whether the evidence presented at trial was legally and factually sufficient to prove that [Jiggetts] committed the crime of possession of a controlled substance. . . .

- 3 -

3. Whether the evidence presented at trial was legally and factually sufficient to prove that [Jiggetts] was in possession of body armor. . . .

4. As an alternative to the "sufficiency of the evidence" claims raised in issues no. 1, 2, and 3, whether the verdicts of guilty in this matter were against the weight of the evidence, and so contrary to the evidence as to shock one's sense of justice.

5. Whether the trial court committed reversible error in denying [Jiggetts] the right to present relevant evidence of the relevant criminal convictions of the individuals found in the home at the time of the search . . . .

Jiggetts' Brief at 4-5.

In her first three issues, Jiggetts challenges the sufficiency of the evidence to sustain her various convictions. When analyzing whether the evidence was sufficient to support a conviction, this Court must "view the evidence in the light most favorable to the Commonwealth as the verdict winner in order to determine whether the jury could have found every element of the crime beyond a reasonable doubt." *Commonwealth v. Thomas*, 215 A.3d 36, 40 (Pa. 2019). "The Commonwealth may sustain its burden by means of wholly circumstantial evidence, and we must evaluate the entire trial record and consider all evidence received against the defendant." *Commonwealth v. Hopkins*, 67 A.3d 817, 820 (Pa. Super. 2013). "The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented." *Commonwealth v. Brown*, 52 A.3d 320, 323 (Pa. Super. 2012). "Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no

probability of fact may be drawn from the combined circumstances." **Commonwealth v. Vargas**, 108 A.3d 858, 867 (Pa. Super. 2014) (*en banc*). Additionally, this Court cannot "re-weigh the evidence and substitute our judgment for that of the fact-finder." **Id**. A challenge to the sufficiency of the evidence presents a pure question of law and, as such, our standard of review is *de novo* and our scope of review is plenary. **Commonwealth v. Jacoby**, 170 A.3d 1065, 1076 (Pa. 2017).

Jiggetts first claims that the evidence was insufficient to sustain her convictions for receiving stolen property and theft of property lost. Specifically, Jiggetts contends that the Commonwealth failed to show that Jiggetts knew, or believed, the guns found in her house were stolen or lost. Jiggett's Brief at 11. None of the guns had altered serial numbers or any other apparent indicator that they were stolen. They also were not stolen or lost recently enough to warrant an inference of guilty knowledge. **Id.**

The offense of receiving stolen property is defined as follows:

A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner.

18 Pa.C.S.A. § 3925(a). To establish this offense, the Commonwealth must show that: (1) the goods are stolen; (2) the defendant received such goods; (3) the defendant knew them to be stolen or had reasonable cause to know

that they were stolen. ***Commonwealth v. Davis***, 280 A.2d 119 (Pa. 1971); ***Commonwealth. v. Gore***, 424, 406 A.2d 1112, 1114 (Pa. Super. 1979).

The offense of theft of property lost, mislaid, or delivered by mistake is defined as follows:

> A person who comes into control of property of another that he knows to have been lost, mislaid, or delivered under a mistake as to the nature or amount of the property or the identity of the recipient is guilty of theft if, with intent to deprive the owner thereof, he fails to take reasonable measures to restore the property to a person entitled to have it.

18 Pa.C.S.A. § 3924.

As to both of these charges, Jiggetts only contests whether the Commonwealth established that she knew or believed the guns were stolen or lost. The Commonwealth may establish the element of guilty knowledge by direct evidence or by circumstantial evidence. ***Commonwealth v. Simmons***, 336 A.2d 624 (Pa. Super. 1975). "A permissible inference of guilty knowledge may be inferred from the unexplained possession of recently stolen goods as well as from the surrounding circumstances. Whether possession is recent and whether it is unexplained are normally questions for the trier of fact." ***Commonwealth v. Grabowski***, 549 A.2d 145, 148 (Pa. Super. 1988). "Relevant considerations include but are not limited to the accused's conduct at arrest and conduct while in possession; the time elapsed between the accused's possession and the theft; the type of property; the situs of the theft and the situs of the possession; the value of the property and the price paid for the property; and the quantity of the property." ***Id.*** However, mere

possession of stolen property is not by itself sufficient circumstantial evidence to establish the requisite guilty knowledge. ***Commonwealth v. Henderson***, 304 A.2d 154, 156 (Pa. 1973).

Based upon our review of the record, we conclude that, although there was no direct evidence, the Commonwealth presented sufficient circumstantial evidence from which the jury could freely infer that Jiggetts knew or believed that the guns were stolen or lost.

Here, it is undisputed that the guns in question were either stolen or lost. Two of the guns were stolen or lost in or near Uniontown. Following the theft or loss of the guns from the registered owners, they were neither returned to the owners nor remitted to law enforcement.

Not long after the guns were lost or stolen, the police found them at Jiggetts' home, where she was the named lessee. One gun was found in Jiggetts' own bedroom; the other two were found in common areas of her home. Jiggetts admitted these guns were not registered to her. Moreover, although Jiggetts claimed she did not live there, she went there every day to feed her pets. Despite this, Jiggetts claimed to have no knowledge of the guns and no explanation as to why the guns were there. Additionally, on the day of the incident, when the police asked Jiggetts who was in her house, she said no one. She later acknowledged, however, that she had people staying there. Her conflicting and untruthful responses indicate Jiggetts sought to conceal from police the contents of and activities in her home. This evidence, if believed, indicates guilty knowledge.

Thus, viewing the evidence in the light most favorable to the Commonwealth, we conclude that there was sufficient evidence to sustain Jiggetts' convictions for receiving stolen property and theft of property. Accordingly, Jiggetts' first issue entitles her to no relief.

In her second issue, Jiggetts argues that the evidence was insufficient to sustain her conviction for possession of a controlled substance. Specifically, Jiggetts contends that the Commonwealth failed to show that, since the pills were not found on her person, she did not constructively possess them. Jiggetts' Brief at 12.

> 35. P.S. § 780-113(a)(16) prohibits:
>
> (16) Knowingly or intentionally possessing a controlled or counterfeit substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, unless the substance was obtained directly from, or pursuant to, a valid prescription order or order of a practitioner, or except as otherwise authorized by this act.

35 P.S. § 780-113. Possession of a controlled substance can be found by "proving actual possession, constructive possession, or joint constructive possession." *Commonwealth v. Parrish*, 191 A.3d 31, 26 (Pa. Super. 2018), *appeal denied*, 202 A.3d 42 (Pa. 2019) (citation omitted). Where contraband is not found on a defendant's person, "the Commonwealth is required to establish that the defendant had constructive possession of the seized items to support his convictions." *See Commonwealth v. Brown*, 48 A.3d 426, 430 (Pa. Super. 2012). With respect to constructive possession, this Court has noted:

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.

*Commonwealth v. Hopkins*, 67 A.3d 817, 820 (Pa. Super. 2013) (citations omitted). "Individually, the circumstances may not be decisive; but, in combination, they may justify an inference that the accused had both the power to control and the intent to exercise that control, which is required to prove constructive possession." *Commonwealth v. Carter*, 450 A.2d 142, 147 (Pa. Super. 1982). Considering the totality of the circumstances in this case, we conclude that there was sufficient evidence for the jury to find that Jiggett's had constructive possession of the pills.

Here, the pills, like the guns, were found at Jiggetts' home. Jiggetts admitted that she did not have a prescription for the pills. Jiggetts claimed that the pills were not hers, but belonged to others who were staying at her house. However, the evidence showed that Jiggetts went to her house daily, even though she claimed she was staying elsewhere. Although others were staying at her home and had access to the pills, this does not preclude a finding that Jiggetts also had constructive possession of the pills. "[P]ossession of an illegal substance need not be exclusive; two or more can possess the same drug at the same time." *Commonwealth v. Macolino*,

469 A.2d 132, 135 (Pa. 1983); *Commonwealth v. Griffin*, 326 A.2d 554 (Pa. Super. 1974).

Additionally, Jiggetts' conduct before the search is relevant to our consideration. Again, when the police asked who was in the house, she told them no one. Control of the premises like an owner or lessee is indicative of possession. *See Commonwealth. v. Samuels*, 340 A.2d 880, 886 (Pa. Super. 1975). Additionally, this evidence demonstrated that Jiggetts sought to protect the property and its contents. This too is indicative of possession. *See Commonwealth v. Sweitzer*, 177 A.3d 253, 259 (Pa. Super. 2017).

Although the pills were equally accessible to others, as Jiggetts argues, the totality of the circumstances demonstrated that she too had constructive possession of these pills.

Thus, viewing the evidence in the light most favorable to the Commonwealth, we conclude that there was sufficient evidence to sustain Jiggetts' conviction for possession of a controlled substance. Accordingly, Jiggetts' second issue entitles her to no relief.

In her third issue, Jiggetts argues that the evidence was insufficient to sustain her conviction for possession of unlawful body armor. Specifically, Jiggetts contends that the Commonwealth failed to show that she was in possession, custody, or control of the body armor and did so while committing or attempting to commit a felony. Jiggetts' Brief at 14.

"A person commits a felony of the third degree *if in the course of the commission of a felony or in the attempt to commit a felony* he uses or

wears body armor or has in his control, custody or possession any body armor."[2] 18 Pa.C.S.A. 907(c)(emphasis added).

Here, the body armor was found in Jiggetts own bedroom, just lying on the floor. This is also where one of the stolen guns was also found. Jiggetts was at her home on a regular basis. Additionally, as noted above, Jiggetts sought to avoid having the police search her home. Thus, as with the pills, the totality of the circumstances demonstrated that Jiggetts had constructive possession of the body armor.

Furthermore, as discussed above, the jury found Jiggetts guilty of receiving stolen property and theft of property lost. Both of these offenses are felonies. As a result, while Jiggetts had the stolen and lost guns in her possession and control at her home, she was committing a felony. At the same time, she had the body armor in her possession. Thus, the evidence showed that Jiggetts was committing a felony while she had the body armor in her control and possession. *See Commonwealth. v. Phillips*, 93 A.3d 847, 856 (Pa. Super. 2014) (finding sufficient evidence to sustain defendant's conviction for possession of unlawful body armor where the defendant possessed a firearm but was a prohibited person under 18 Pa.C.S.A. § 6105(a)(1), a felony, and was wearing a Kevlar vest).

Thus, viewing the evidence in the light most favorable to the Commonwealth, we conclude that there was sufficient evidence to sustain

---

[2] We note that this offense falls under possession of instrument of crime.

Jiggetts' conviction for possession of unlawful body armor. Accordingly, Jiggetts' third issue entitles her to no relief.

In her fourth issue, Jiggetts challenges the weight of the evidence. Specifically, Jiggetts argues that the evidence presented at trial tended to show that she had nothing to do with the contraband found in her home. Instead, it showed that the others staying in Jiggetts' home were responsible for it. Jiggetts' Brief at 18. We disagree.

When reviewing a challenge to the weight of the evidence, our standard of review is as follows:

> The essence of appellate review for a weight claim appears to lie in ensuring that the trial court's decision has record support. ***Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion.***
>
> * * *
>
> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.
>
> * * *
>
> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. ***Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.***

- 12 -

*Commonwealth v. Clay*, 64 A.3d 1049, 1054–55 (Pa. 2013) (citations omitted) (emphasis added).  Absent an abuse of discretion, the trial court's decision will not be disturbed.  *See Commonwealth v. Griffin*, 515 A.2d 865, 869 (Pa. 1986).  An abuse of discretion "is not merely an error in judgment.  Rather, it involves bias, partiality, prejudice, ill-will, manifest unreasonableness or a misapplication of the law." *Commonwealth v. West*, 937 A.2d 516, 521 (Pa. Super. 2007).  By contrast, a proper exercise of discretion "conforms to the law and is based on the facts of record." *Id.*

Initially, we note that Jiggetts does not specify how the trial court abused its discretion; she merely argues evidence favorable to her and, essentially, asks us to reweigh the evidence.  Based upon our standard of review for weight claims, we cannot do so. *Clay, supra*.  Nonetheless, after a careful review of the record and the trial court's reason for denying Jiggetts' weight claim, we conclude that the trial court did not abuse its discretion.

In reaching its decision, the trial court explained that the evidence easily proved that Jiggetts committed the crimes of which she was convicted, and that, in rendering its verdict, the jury chose to believe the circumstantial evidence presented by the Commonwealth.  Trial Court Opinion, 3/15/19, at 8-9.  Because that determination was for the jury to make and should only be overturned if it is so contrary to the evidence as to shock one's sense of justice, the trial court denied Jiggett's weight claim.  Trial Court Opinion, 3/15/19, at 8.

- 13 -

Based upon the trial court's rationale and our review of the evidence as discussed above, we find that the trial court did not abuse its discretion in concluding that the jury's verdict was not against the weight of the evidence. As the trial court recognized, the jury was free to believe all, part, or none of the evidence. *Commonwealth v. Watson*, 945 A.2d 174, 177 (Pa. Super. 2008). Accordingly, Jiggetts' fourth issue entitles her to no relief.

In her last issue, Jiggetts challenges the trial court's refusal to admit into evidence the criminal histories of the others living in Jiggetts' home when it was searched, and the contraband was found. Specifically, Jiggetts argues that the trial court erred in excluding this evidence, under Pennsylvania Rule of Evidence 404(b) regarding prior bad acts. Because the evidence would have shown that the others living in Jiggetts' residence had a motive for possessing the stolen and lost gun, an exception to the rule, she claims the trial court should have admitted the evidence. Jiggetts' Brief at 19-20.

In reviewing an evidentiary challenge, we note:

[o]ur standard of review regarding the admissibility of evidence is an abuse of discretion. The admissibility of evidence is a matter addressed to the sound discretion of the trial court and ... an appellate court may only reverse upon a showing that the trial court abused its discretion. An abuse of discretion is not a mere error in judgment but, rather, involves bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of law.

*Commonwealth v. Collins*, 70 A.3d 1245, 1251-1252 (Pa. Super. 2013), appeal denied, 80 A.3d 774 (2013) (citations and quotations omitted).

Generally, "[e]vidence of a [person's] prior criminal activity is inadmissible to demonstrate his bad character or criminal propensity." *Commonwealth v. Cox*, 115 A.3d 333, 337 (Pa. Super. 2015) (citation omitted). However, "'[p]rior bad acts' evidence may be admissible where it is relevant for some other legitimate purpose and not utilized solely to blacken the [person's] character." *Commonwealth v. Russell*, 938 A.2d 1082, 1092 (Pa. Super. 2007), *appeal denied,* 956 A.2d 434 (2008). Pennsylvania Rule of Evidence 404 provides in pertinent part as follows:

(b) Other crimes, wrongs, or acts.

(1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.

(2) Evidence of other crimes, wrongs, or acts **may be admitted for other purposes, such as proof of motive**, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

(3) Evidence of other crimes, wrongs, or acts proffered under subsection (b)(2) of this rule may be admitted in a criminal case only upon a showing that the probative value of the evidence outweighs its potential for prejudice.

Pa.R.E. 404(b) (emphasis added). To be admissible under the motive exception, "there must be a specific logical connection between the other act and the crime at issue which establishes that the crime currently being considered grew out of or was in any way caused by the prior set of facts and circumstances." *Commonwealth v. Ross*, 57 A.3d 85, 100 (Pa. Super. 2012) (*en banc*) (quotation marks and citation omitted), *appeal denied*, 72 A.3d 603 (Pa. 2013).

- 15 -

In explaining its reason for precluding this evidence, the trial court stated: "[J]iggetts' purported use of the prior criminal record of the individuals she alleges to have been living in her home is the exact use prohibited by the Rules of Evidence—to prove these persons acted in conformity with their prior convictions." Trial Court Opinion, 3/15/19, at 9. Thus, the trial court excluded the testimony under Rule 404 (b)(1).

However, Jiggetts sought to introduce the evidence under Rule 404(b)(2). Jiggetts sought to admit evidence of the criminal histories of the others living at her residence to demonstrate that all of these individuals, except for Jiggetts, were prohibited from possessing firearms. Because of prior convictions, they could not legally purchase a gun. Therefore, they had a reason to obtain and possess stolen or lost guns. Thus, this information was offered to show these individuals had motive to acquire stolen or lost guns. Jiggetts, on the other hand, had no such motive; she could legally purchase a gun if needed. Rule 404(b) allows the prior bad acts evidence to establish motive. The trial court erred in refusing to admit this evidence.

Additionally, the excluded evidence was harmful to Jiggetts' case. There was no direct evidence of who actually possessed the guns. Thus, the evidence proffered by Jiggetts would have supported her defense. Evidence which tends to show that the crime for which an accused stands trial was committed by someone else is relevant and admissible. ***Commonwealth v. McGowan***, 635 A.2d 113, 115 (Pa. 1993). As a result, the exclusion of this evidence constituted prejudice. It is therefore necessary to remand the case

- 16 -

for a new trial. However, since evidentiary error only affects Jiggetts' convictions for receiving stolen property, theft of property lost, and possession of unlawful body armor, a new trial shall be held on these charges only. Jiggetts' conviction for possession of a controlled substance is unaffected, and consequently, stands.

Judgment of sentence vacated. Conviction for possession of a controlled substance affirmed. Convictions for receiving stolen property, theft of property lost, and possession of unlawful body armor reversed. Case remanded for a new trial in accordance with this decision. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/3/2020